No. 1678.—Louis Surgi v. George Colmer

In a petitory action the party assailed may inquire into the regularity of the proceedings under an order of seizure and sale by which the attacking party acquired title to the property, and if the formalities required by law have not been observed in making the sale under the order, the title of the sheriff is a nullity.

A sale of property under an order of seizure, after the mortgage debtor has died, without making the heirs or legal representatives parties, is a nullity.

A party having acquired title and possession of real property at probate sale, regularly made, will hold it against a sheriff's title made under an order of seizure, in which the formalities required by law have not been observed.

APPEAL from Second Judicial District, parish of Jefferson. *Dugue, J.* *Finney & Miller,* for plaintiff and appellant. *E. Wooldridge,* for defendant and appellee.

TALIAFERRO, J. The plaintiff instituted this suit to recover a tract of land situated on the the Island of Barrataria, known as "The Little Temple," by which term is designated a large mass of shells, which it seems constitute the principal value of the property, and which are brought in large quantities to New Orleans and used for the improvement of the streets, landings, etc., of the city. The defendant is in possession, and for near twelve months before the institution of this suit, leased the property to persons engaged in the traffic in shells.

Both parties trace title from one Louis Decueris, a former owner, who, both contestants admit, had a perfect title. The plaintiff claims under a sheriff's deed to him as purchaser of the property at a sale made *via executiva,* to pay a debt owing by Decueris to plaintiff and secured by mortgage on the property. The defendant sets up title by virtue of a

probate sale of the property of the succession of Decueris, made in the parish of Livingston.   This sale was made on the fourth of May, 1867. Decueris died on the twenty-seventh of November, 1862.   The sheriff's sale, made under an order of seizure and sale, and by virtue of which Surgi claims the property, took place on the seventh of July, 1863.  On the trial of the case in the court below, the defendant had judgment in his favor, and the plaintiff takes this appeal.

The defendant combats the validity of the title set up against him on several grounds:

That no notice of the demand or of the order required by article 736 of the Code of Practice was ever issued by the clerk who illegally issued the writ immediately and before the delay for a suspensive appeal had expired.

That the appointment of R. L. Preston curator *ad hoc* was illegal and inoperative, because the defendant was not an absentee.

That when seizure was actually made the delay within which the sheriff was bound to return the writ had expired.

That Louis Decueris having died on the twenty-seventh of November, 1862, the suit of Surgi against him was suspended until his heirs or representatives were made parties, which was never done; and consequently the sale made on the seventh of July, 1863, was null, and transferred no title to Surgi, whose claim is under that sale.

The plaintiff's counsel argues that the defendant can not draw in question collaterally the validity of the plaintiff's title, founded as it is upon the decree of a competent court and the adjudication of the sheriff of that court; that Decueris might have contested that decree and adjudication by appeal or action of nullity, but that they must stand and have effect in any controversy between plaintiff and third persons, until set aside by a direct action.

To this reasoning we can not assent.   This is a petitory action, in which the plaintiff seeks to wrest from the defendant certain property in his possession, and to do so in virtue of the judgment, seizure and sale by which he asserts title.   He makes directly the issue upon that title.   The defendant has the right clearly to protect himself if he can do so by showing the invalidity of the title with which he is attacked.

The case of Dufour *v.* Camfranc, 11 Martin, p. 607, is referred to by counsel in support of the position they assume.   In that case, Dufour and his sister, heirs of Victor Dufour, deceased, sued Camfranc for certain slaves in his possession.   Camfranc answered that he purchased the slaves sued for at a sheriff's sale, made in the execution of a judgment against the absent heirs of Victor Dufour, and showed the sheriff's deed.   The plaintiffs replied that the judgment was null, assigning, among other reasons, that there had never been a citation issued.   The court said:  " The decree rendered was conclusive between the same parties or those claiming under them for the · same thing."  But

Dufour, the plaintiff, was one of the heirs against whom the judgment was rendered; therefore he could not incidentally and collaterally set up its nullity. In Bernard v. Vignaud, 1 N. S. p. 8, a judgment had been obtained against Foque, as tutor of minors, with recognition of legal mortgage on all the real estate he owned during the tutorship. Under this judgment proceedings had been taken against certain property then in possession of Vignaud, the defendant, a third party, who had purchased it from Foque. The defense set up was the nullity of the judgment, on various grounds. The plaintiff objected to the proceeding, as attacking collaterally the judgment he was seeking to enforce, and cited the case of Dufour v. Camfranc, just noticed. But the court ruled that Vignaud, the third possessor, was a stranger to the proceedings against Foque, and not concluded by them. That he could therefore oppose the nullity of the judgment with which he was assailed.

We see no material distinction between that case and the one at bar. The defendant in this case was no party to the judgment of Surgi against Decueris. He was a stranger to the proceeding. He purchased the property at a probate sale of Decueris' succession, and went into peaceable possession of it under that title, having previously held the premises more than twelve months as the agent of Decueris' widow. The defendant had clearly the right to plead the nullity of the judgment offered by plaintiff as the basis of his title. See 3 L. 245; 15 L. 59; 2 A. 160; 6 L. 731; 1 N. S. 7.

Looking into the character of the plaintiff's judgment, we find that upon a mortgage to him by Decueris, importing a confession of judgment, he took out an order of seizure and sale. The petition was filed on the eighteenth of May, 1861. It set out that Decueris was then a resident of the parish of Orleans. The order and the writ were issued on the same day. We do not find that this writ was ever returned. We find no notice issued by the clerk. Various proceedings were had subsequently. An *alias* writ was issued on the fourteenth May, 1863, and the property sold seventh July, 1863. *Article 736 C. P., requires the clerk of the court issuing the order to direct to the sheriff of the parish where the debtor resides a written notice to be given to him, and it shall be the duty of the sheriff to serve the notice and return the original with his return, in the same manner as in ordinary citations." The party against whom a proceeding *via executiva* is taken is entitled to the delay prescribed by article 736 C. P., in order that he may take a suspensive appeal. 1 R. 295; 5 A. 737; 8 A. 23.

The order was equivalent to a judgment; and the seizure being made without the required notice being previously given, the defendant was deprived of the right of a suspensive appeal. It is shown that at the time Decueris was proceeded against as an absentee, he was living in

the parish of Livingston, cultivating a farm and running a saw mill in that parish. The return of the sheriff of Livingston parish, to whom a notice had been sent to be served upon Decueris, that he was unable to find such a person, is scarcely to be taken as showing due diligence to find him, confronted as it is by several witnesses who swear to his actual residence and domicile there at that time.

On the twenty-fourth or twenty-ninth of November, when the writ was recorded in the mortgage office, according to the act of 1857, p. 158, the time at which, by the provisions of that act, the seizure was made, the delay within which the sheriff was bound to return the writ had expired. Decueris died, as we have seen, on the twenty-seventh November, 1862. No proceedings were taken to make his heirs and representatives parties. Sale of the property was made on the seventh of July, 1863. " No judicial proceedings can be carried on in the name of a dead man, nor can the property he leaves be taken from his heirs and legal representatives without proceeding against them as directed by law. Such execution is a nullity." 5 R. 508; 5 A. 737. This last case is very close in point with the one before us. The judgment resisted in that case was pronounced a nullity on the grounds that there was no notice of seizure, and that the sale had been made after the decease of the defendant, without making his heirs parties.

The proceedings in the succession of Decueris in relation to the probate sale at which the defendant purchased the property in controversy seem to have been regularly conducted.

It is, for the reasons given, ordered, adjudged and decreed that the judgment of the District Court be affirmed, with costs in both courts.