MUEHRCKE, Respondent, v. BEHRENS, Appellant. [Case No. 256.]

BEHRENS, Appellant, v. TOWN OF DOTY, Respondent. [Case No. 257.]

*Nos. 256, 257. Argued May 6, 1969.—Decided June 3, 1969.*
(Also reported in 169 N. W. 2d 86.)

For the appellant there was a brief by *Cornelisen, Denissen, Kranzush, Kuehn & Condon,* attorneys, and *David J. Condon* of counsel, all of Green Bay, and oral argument by *David J. Condon.*

For the respondent B. C. Muehrcke there was a brief by *Lehner, Lehner & Behling* and *Adolph P. Lehner,* all of Oconto Falls, and oral argument by *Howard N. Lehner.*

For the respondent town of Doty there was a brief by *Plier & Plier* and *James H. Plier* and *Donald J. Plier,* all of Oconto, and oral argument by *James H. Plier.*

BEILFUSS, J. The principal issue in both actions is whether the road is public or private. Other issues deal with the admission of an exhibit and the sufficiency of the evidence as to width and length of the road and sufficiency of evidence in the Muehrcke action.

Muehrcke's property and Behrens' property both abut the section line and the lake. Muehrcke's property is just south of the section line and is 1300 feet square; he acquired it in 1914. Behrens' property is just north of the section line; it has a shoreline width of 200 feet and extends east to Bear Trail. Mr. Behrens' father acquired the property by land contract and subsequent deed in 1938; the plaintiff Behrens acquired title by descent

in 1955. Neither Mr. Muehrcke nor Mr. Behrens are residents of the town; both use their property for summer homes and recreational purposes.

Muehrcke testified the road was there when he acquired his property and built his cabin in 1914.

An entry in the town record book provides as follows:

"December 8, 1932. A road was established by the Town Board from Main Road (Bear Trail) between Sec. 28–27–21–22, running West on Sec. Line between 21 and 28, West 160 rods. [Signed] A. Watermolen, Town Clerk."

The distance west was originally written as 80 rods, but the figure "160" was clearly superimposed over it.

Mr. William Haynes testified that he and four others, prior to 1935, were employed by the town to work on the road; that they brushed, cut trees, pulled stumps and removed rocks from the road from Bear Trail to six or eight feet from the lakeshore at a width of 50 feet; and that the road was not graveled at that time. He further testified that he is now employed by the Oconto county highway department and has graded the road at least once a year for the past 14 years.

Another witness testified that during 1936 and 1937 he was employed by the town to brush, pick rocks, and haul gravel on the road.

Several witnesses testified the road has been used by the public since 1935 for the purposes of swimming, duck and grouse hunting, berrypicking, trapping, and boating.

Mr. Cyril Rohe testified that he has been chairman of the town for the past fifteen years and a member of the board for six additional years; that during this entire period each year the town has expended funds for the maintenance of the road and that the entire road has been graded at least twice a year. He identified 14 persons who had been employed and paid by the town for work on the road.

The state highway commission has inspected and approved the road for state aids from 1938 until the date of trial. In 1938 and 1939 aids were paid on 0.21 of a mile; 1940 to 1958 on 0.5 mile, and 1959–1966 on 0.46 mile.

The south 50 feet of Mr. Behrens' property has not been assessed for at least ten years prior to the trial upon the basis that it was a public road. The road is not on both sides of the section line. The entire road is on the north side (Behrens' side) of the section line. At some points the edge of the road is on the section line and at others it deviates to the north from six to 25 feet and at one extreme, at a place referred to as the fork in the road, 60 feet. (See Exhibit 9 reproduced elsewhere in this opinion.)

The distance from Bear Trail to the lakeshore is 2526.93 feet, which is about 113 feet less than 160 rods or one-half mile. The fork in the road is approximately 490 feet from the west or lakeshore end of the road. The south fork gives both Muehrcke and Behrens access to their cottages. (The north fork is used by four other persons for access to their property.)

By 1963, the road had overgrown with brush so that in several places the road was not wide enough for two cars to pass. In June of 1963, the town hired a crew with heavy equipment which brushed out the road to a 50-foot width, established or re-established ditches, made cuts on some hills, and graded the traveled portion of the highway to a width of about 20 to 28 feet, so that two cars can readily pass at any part of the roadway. In addition, it has shoulders and ditches.

Mr. Behrens attempted to stop the town crew from any further work on the road and erected a fence-type barricade in the south leg of the fork and dug several trenches about a foot wide and four inches deep across the road. These barricades and obstructions led to the present actions.

Several years prior, in 1946, Mr. Behrens' father had placed barricades in about the same location in the highway. The town removed the barricades and Behrens senior brought an action to restrain the town, claiming the road was a private road. This action was settled by a stipulation which did not resolve the principal issue. Behrens agreed to remove the barricade and the town agreed not to maintain the part of the road any more than was necessary to protect itself against liability to public users. The action was then dismissed on its merits. We agree with the trial court that the nature of the stipulation was such that the issue of whether it was a public or private road was not adjudicated.

Sec. 80.01 (1) of the statutes provides:

"VALIDATION OF HIGHWAYS, RECORDING. All highways laid out by the town supervisors, the county board or by a committee of the board, or by commissioners appointed by the legislature, or by any other authority, and recorded, any portion of which has been opened and worked for 3 years are legal highways so far as they have been so opened and worked. The filing of an order laying out any highway or a certified copy thereof in the office of the clerk of the town or the county in which the highway is situated is a recording of such highway within the meaning of this section."

There is no record of the action of the town board nor any recording of the highway other than the information contained in the 1932 town record book. This record falls far short of the procedural requirements for laying out public highways as provided in secs. 80.02 and 80.08, Stats.

Sec. 80.01 (2), Stats., in part, provides:

"All highways not recorded which have been worked as public highways 10 years or more are public highways, . . ."

The trial court was of the opinion that the highway in question became a public highway by virtue of sec. 80.01 (2), Stats. We agree.

The 1932 record entry indicated at least an intention by the town board to lay out the road as a public highway. All of the actions of the town since that time, insofar as they appear in the record, are consistent with a recognition that it was a public highway. The town cleared the entire roadway to a width of 50 feet in 1935; it was at least partially graveled in 1937–1938 and thereafter; town funds have been expended for maintenance of the entire road continuously for at least twenty-one years; the town certified it was a public road for state highway aid; it resisted a claim that it was a private road in 1946, and made extensive repairs designed for public use in 1963. In addition there is testimony that the road has, in fact, been used by at least limited members of the public for thirty years.

These facts are in substance the findings of the trial court and are not contrary to the great weight and clear preponderance of the evidence. These findings, in our opinion, compel the same conclusion reached by the trial court, to wit, that the road in question has become a public highway by virtue of sec. 80.01 (2), Stats.

Behrens contends that it was error to receive in evidence Exhibit F, the 1932 town record. It is contended that because the "160" rods was superimposed over the 80 rods, describing the length of the road, the record cannot be received as an ancient document. Instruments and records executed more than thirty years prior to trial are admissible and pertinent but not controlling.[1] However, where the instrument shows an alteration on its face it is the obligation of the party offering it to explain the alteration.[2] The court received the exhibit subject to

[1] *Jefferson v. Eiffler* (1962), 16 Wis. 2d 123, 113 N. W. 2d 834.

[2] *Page v. Danaher* (1877), 43 Wis. 221.

the objection and subsequently considered it in making its findings.

No direct evidence as to the alteration was offered by the town, however other relevant evidence was received which substantiated the road length as 160 rods rather than 80. When the road was cleared, brushed out and rocks removed in 1935, it was for the entire length—from Bear Trail to a few feet from the lake. The annual grading of the road was the entire length. Further, the testimony reveals that in the early 1930's there was no public access to Boulder Lake and that the road was used by members of the public for recreational purposes. It hardly seems logical that the town would lay out a highway for the benefit of the public that ended halfway to the lake.

In our opinion there is ample evidence to support the finding that the road extended to a point 43 feet from the lake, the exhibit had some probative value, and its admission was not prejudicial error.

Mr. Behrens also contends that the evidence does not sustain the court's findings as to the width and length of the road. The finding was that the road was 50 feet wide and extended to a point 43 feet from the lake. Had the trial court found that the road extended to a point six to eight feet from the lakeshore that finding could have been sustained. The court chose to accept the testimony of Mr. Behrens himself that the road terminated 43 feet from the lake. (It is Mr. Behrens' position that the road terminated at 1,350 feet from Bear Trail.) Without repeating the evidence, we hold the testimony was clearly sufficient to sustain the finding of the trial court.

As to the width of the road, the town has consistently maintained a dominion of 50 feet. The fact that brush had grown on the sides of the traveled tracks does not compel a finding that the limit of the road was the limit of those counters.

In *Jacobosky v. Town of Ahnapee* (1944), 244 Wis. 640, 647, 648, 13 N. W. 2d 72, it is stated:

" 'Some attempt is made to contend that, the original attempt to lay out a highway on the center line of the section having been invalid, this road must be considered one solely by prescription, and hence that a strip of land at least wide enough for all the purposes of a highway, including turnouts and the like, if not fully four rods wide, had been acquired by the public, with the traveled track as the center thereof. It may be conceded that where the public, for the statutory period, or for twenty years, have followed a given course of travel with no authority whatever, they have acquired a strip wider than the mere ground over which the wheels persistently pass. [Cases cited.] The logic of such a conclusion is that the conduct of the public has declared their need for a highway, and that a highway is to consist of space enough not only for a single team to pass along, but for teams to pass each other. This inference, however, fails in a case like this, where, as conclusively appears, the travel commenced with an attempted laying out of a distinct four-rod strip, which in this case was bounded by a line two rods each side of the center line of the section. Under those circumstances no other inference is legitimate than that it is a declaration by the public that they believe such attempt at laying out a highway to have been valid, and that they propose to use that strip. Their travel generally in accordance with it has no other significance. . . .' "

If it is legally intended a public road should be wide enough for two teams to pass in years gone by, certainly it should be intended that a public road for convenience and safety of user should be wide enough today for two cars to pass. The 50-foot width for the 20 to 28 foot traveled portion, plus enough additional footage for shoulders and ditches, is reasonable and its use is sustained by the evidence.

Mr. Behrens also contends that the court erred in not dismissing Muehrcke's complaint upon a motion to dismiss at the close of Muehrcke's testimony. In view of the fact that we affirmed the finding that the road is public

and enjoining barricades this contention might well be academic except that the actions are separate actions and result in a question of costs.

We have reviewed the evidence offered by Mr. Muehrcke and agree with the trial court that the motion to dismiss should have been denied. Mr. Muehrcke's testimony was sufficient to identify himself, the road, its location and length, its position relative to his property, that the town worked the road since 1932 or 1933, and the character and location of the barricade. This testimony was sufficient to defeat the motion to dismiss.

Judge MARTINEAU'S original memorandum decision was dated May 2, 1968. Upon the court's own motion, without notice, an amended memorandum decision was filed June 17, 1968. The May 2d decision contained an inconsistency. The road was described as 50 feet wide along the section line. Judge MARTINEAU had accepted Exhibit 9, offered by Behrens, as the true location of the road. (There is really no dispute as to where the road is located.) It is obvious from Exhibit 9 that the road is not exactly on the section line at all places. The amended judgment simply substituted a detailed metes and bounds description to conform to Exhibit 9. The judgments entered in both actions followed the amended memorandum decisions. We perceive no valid reason why the trial court could not correct an obvious error upon its own motion prior to entry of judgment. We believe the trial court should be commended for doing so.

Mr. Behrens further contends the metes and bounds description does not completely conform to the survey map, Exhibit 9. It was clearly the opinion in the memorandum decision of Judge MARTINEAU that the road stopped 43 feet short of the lakeshore. If this finding is not reflected in the long and detailed metes and bounds description, or any other error in the nature of a scrivener error appears in the judgment, either party may within

sixty days after remittitur move the trial court to correct the description of the road in the judgment.

*By the Court.*—Judgments affirmed, but with leave to amend the description of the public highway consistent with the opinion.