308 So.2d 464 (1975)
Victoria Prudhomme OSBORN et al., Plaintiffs-Appellants,
v.
C. N. JOHNSTON et al., Defendants-Appellees.
No. 4753.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1975.
Rehearing Denied March 12, 1975.
Writ Granted June 6, 1975.
*465 Landry, Watkins, Cousin & Bonin by William O. Bonin, New Iberia, for plaintiffs-appellants.
Aycock, Horne, Caldwell & Coleman by Jack C. Caldwell, Franklin, John E. Parker, *466 New Orleans, Liskow & Lewis by W. M. Hall, Jr., Lafayette, Lancelot P. Olinde, New Orleans, for defendants-appellees.
Before HOOD, CULPEPPER and WATSON, JJ.
HOOD, Judge.
This is a petitory action instituted by the heirs of Lassaline P. Briant against a number of defendants, the latter being the assignees and mineral lessees of James Owens and Alcide Owens. Plaintiffs seek a judgment declaring them to be the owners of an undivided one-half (½) interest in the property hereinafter described, and requiring defendants to account for the minerals produced from drilling units which include the subject property. By stipulation of the parties, the demand for an accounting was not tried, but is being held in abeyance pending a determination of the title question.
Judgment was rendered by the trial court in favor of defendants, rejecting plaintiffs' claim of ownership to the property and dismissing their suit with prejudice. Plaintiffs appealed.
The trial judge found, correctly we think, that neither the plaintiffs nor the defendants were in possession of the property. The overriding issue presented, therefore, is whether plaintiffs have proved a better title to the subject property than the defendants, as required by LSA-C.C.P. art. 3653.
The property affected by this action is an undivided one-half (½) interest in and to the following described tract of land, to-wit:
"Lot 3, Section 1, and Lots 2 and 3, Section 2, Township 13 South, Range 11 East, Southwestern Land District, St. Martin Parish, Louisiana."
Plaintiffs concede that defendants collectively are the owners, mineral lessees and owners of overriding royalty rights of an undivided one-half (½) interest in and to
the above described land. This action relates only to the remaining undivided one-half (½) interest in that land, and the parties have stipulated that the circumstance that defendants own an undivided interest in the property shall not be considered in any way in determining the ownership of the remaining undivided interest which is the subject of this suit. The term "subject property," when used in this opinion, therefore, is intended to refer only to the undivided one-half interest which is claimed by plaintiffs and which plaintiffs do not concede is owned by defendants.
Sometime prior to September 15, 1851, Luke Owens inherited the subject property from his father. On April 18, 1860, he executed a mortgage in favor of Andre Heman, Sr., affecting some contiguous tracts of land, including his undivided one-half interest in the above described land. Luke Owens died between March 25, 1865, and July 2, 1867, leaving as his sole lawful heirs his two minor sons, James and Alcide Owens. The succession of Luke Owens was never opened.
On July 2, 1867, the administrator of the estate of Andre Heman, Sr., instituted a personal action against James and Alcide Owens (both of whom were minors at that time), through an appointed curator ad hoc, seeking a judgment for the amount due on the mortgage indebtedness. A judgment was rendered in that suit on August 10, 1867, condemning the minors, James and Alcide Owens, to pay the sum of $2,000.00, with interest and costs, and recognizing Heman's mortgage on the subject property. A writ of fieri facias was issued on October 20, 1869, over the signature of "L. P. Briant, Deputy Clerk of Court," and pursuant to that writ the subject property was seized and offered for public sale on December 4, 1869. No bids for as much as two-thirds of its appraised value were received at that sale, so the property was not sold at that time but was again offered for sale on January 1, 1870, on 12 months credit.
*467 The subject property was sold at the sale held on January 1, 1870, and the Sheriff's return of the writ of fieri facias and the Sheriff's sale held on the last mentioned date shows that "Miss Valerie Fournet became the purchaser thereof for the price of One Hundred & Fifty Dollars, she being the last and highest bidder, at which time and place said Sugar Plantation was adjudicated to the said Miss Valerie Fournet who gave her bond for said amount of one hundred & fifty Dollars, with L. P. Briant and Z. T. Fournet as her securities, payable in twelve months after the date hereof, this 1st day of January, A.D. 1870." The Sheriff's return was executed on January 1, 1870. It was filed on January 10, 1870, and it bears the inscription and signature. "Filed Jany 10/70 /s/ L. P. Briant Dy Clk."
The Sheriff executed a Sheriff's Deed or Sheriff's Sale, dated January 1, 1870, and it is obvious from a casual examination of that deed that it originally recited that the subject property was sold and conveyed to "Miss Valerie Fournet," as shown in the above mentioned Sheriff's return which was issued on the same day. The name of Miss Valerie Fournet was shown as the vendee in three places in the Sheriff's Deed when it was executed originally. Someone, however, later superimposed the name "Lassaline P. Briant" over the name of Miss Valerie Fournet in all three places where Miss Fournet's name appeared on the Sheriff's Deed, and the word "her" was changed to "his" in two places. The record shows that that Sheriff's Deed was recorded on January 14, 1870.
At the trial, Miss Lucille P. Lacy, an expert examiner of questioned documents, testified that the name "Lassaline P. Briant," which had been superimposed over the name "Miss Valerie Fournet" in the Sheriff's Deed, was not written by the same person who wrote the remainder of the document, that the superimposed name was an overwriting and that it was written by Lassaline P. Briant, plaintiff's ancestor. She made that determination by comparing the overwriting with other known signatures and handwriting samples of the said Lassaline P. Briant. Plaintiffs offered no evidence tending to contradict the testimony of Miss Lacy.
Plaintiffs, of course, claim title solely through L. P. Briant. They do not question the finding of the trial court that Briant altered the Sheriff's Deed. They argue, however, that plaintiffs have a title, although it may be imperfect, and that the title which they have is better than the title claimed by defendants, because they take the position that defendants do not have any title at all to the subject property. Their argument is that defendants claim title through James and Alcide Owens, but that the latter lost their title or right of ownership completely when the property was sold at the Sheriff's Sale on January 1, 1870.
Defendants contend that the Sheriff's Deed dated January 1, 1870, on which plaintiffs rely, was materially altered by changing the name of the vendee from Miss Fournet to plaintiffs' ancestor, L. P. Briant. They argue that this unexplained material alteration renders the Sheriff's Deed wholly void and ineffective, and that neither L. P. Briant, nor his heirs, the plaintiffs in this suit, acquired any interest in the subject property by virtue of that Sheriff's Sale.
Defendants allege and have attempted to prove their ownership of the subject property through two separate chains of title. The following, stated briefly, is one such chain: (1) On April 29, 1889, the property was adjudicated to the State of Louisiana for non-payment of taxes under an assessment in the name of James Owens; (2) on December 29, 1891, the State transferred the property to the Atchafalaya Basin Levee District; (3) on January 31, 1896, the Levee District transferred the property to Pierre Angelloz; (4) on August 1, 1899, Pierre Angelloz transferred it to Arther H. Angelloz; (5) on October 13, 1902, Arther H. Angelloz conveyed the property to James and Alcide Owens; and (6) defendants *468 thereafter acquired title by mesne conveyances from James and Alcide Owens. Alternatively, defendants allege that they acquired title to the subject property in the following manner: (1) James and Alcide Owens acquired ownership by inheritance from their father, Luke Owens, who died prior to July 2, 1867; (2) the entire proceedings instituted by the administrator of the Succession of Andre Heman on July 2, 1867, culminating in the Sheriff's Sale held on January 1, 1870, are null and void; and (3) James and Alcide Owens were not divested of title by the above mentioned Sheriff's Deed, and by mesne conveyance thereafter defendants acquired title from said owners.
The trial judge found that "Lassaline P. Briant, the plaintiffs' ancestor in title, altered the Sheriff's Deed that was to go to Miss Valerie Fournet, in that he erased her name and inserted his name as the vendee," and that this overwriting was done subsequent to the execution of the Sheriff's Deed. He concluded that "Lassaline P. Briant never acquired any interest in the subject property, nor did his heirs, the plaintiffs in this proceeding." The trial court also held:
"Finding that there is no title in the plaintiffs, it becomes unnecessary to go into the title of the defendants, about which so much has been written so well by the attorneys in their briefs."
* * * * * *
"The plaintiffs must make out their title to show some title, before we can look into the defendants' title, and in this case, they have failed to do so."
We agree with the finding of the trial judge that plaintiffs' ancestor, L. P. Briant, materially altered the Sheriff's Deed after that document had been completed by inserting and substituting his name as the vendee instead of Miss Fournet's name.
Plaintiffs contend primarily that Briant acquired title to the subject property by the Sheriff's Deed dated January 1, 1870. They argue, however, that even if Briant didn't acquire title by that sale, then Miss Fournet did, so in any event James and Alcide Owens lost any title or claim of ownership which they may have had prior thereto. They take the position that since defendants claim title through James and Alcide Owens, and the latter lost any title they had by the Sheriff's Sale, defendants have no interest in and no right to question the status of L. P. Briant as the adjudicatee in the Sheriff's Deed, and that the alteration of that deed is immaterial insofar as defendants are concerned.
We find no merit to that argument. The law is settled that the defendant in a petitory action has the right to inquire into the validity of plaintiff's title, regardless of whether the evidence shows that defendant himself has a valid title. Niette v. Stringfellow, 3 So.2d 911 (La.App. 2 Cir. 1941); Surgi v. Colmer, 22 La.Ann. 20 (1870); Blackwell v. Nagy, 122 So.2d 903 (La.App. 1 Cir. 1960); Cronan v. Cochran, 27 La.Ann. 120 (1875); Ziegler v. Babin, 242 So.2d 593 (La.App. 1 Cir. 1970); Thibodeaux v. Thibodeaux, 112 La. 906, 36 So. 800 (1904).
In Surgi v. Colmer, supra, for instance, the Supreme Court said:
"This is a petitory action, in which the plaintiff seeks to wrest from the defendant certain property in his possession, and to do so in virtue of the judgment, seizure and sale by which he asserts title. He makes directly the issue upon that title. The defendant has the right clearly to protect himself if he can do so by showing the invalidity of the title with which he is attacked."
In Blackwell v. Nagy, supra, the First Circuit Court of Appeal said:
"The authorities heretofore cited are examples of the Louisiana Jurisprudence admitting parol evidence in proper cases, and allowing the defendant in a petitory action to attack plaintiffs' title."
*469 Article 3653 of the Louisiana Code of Civil Procedure provides that the plaintiff in a petitory action shall "prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof." The burden rests on plaintiffs in the instant suit, therefore, to prove that they have a better title to the subject property than do the defendants. If plaintiffs fail to prove that they have any title at all, then judgment must be rendered rejecting their demands, because they will have failed to prove that they had a "better title" than defendants. Such a judgment would be required even though the evidence showed that defendants also had no title to the property.
We conclude that defendants have the right to question and to attack plaintiffs' title, because of the fact that they have been made defendants in this petitory action. They thus have the right to question the status of Briant as the adjudicatee in the above mentioned Sheriff's Deed.
Plaintiffs argue further that the trial judge erred in holding that "plaintiffs must make out their title or show some title, before we can look into the defendants' title." They contend that their only burden under LSA-C.C.P. art. 3653 is to prove that they have a "better title" than do the defendants, and that the court thus should inquire into the title claimed by both parties. They take the position that Briant, their ancestor in title, "at least had a claim of title as purchaser," whereas defendants had no title at all. They maintain that they thus have proved a better title than defendants, and that the court erred in declining to look at defendants'"utter lack of title."
We agree with the trial court that plaintiffs must make out a title of some kind in themselves, before it becomes necessary to inquire into defendants' title. We have already observed that if plaintiffs fail to show that they have some title or some grounds for claiming ownership they will have failed to prove a "better title" than even a trespasser, and their suit thus would have to be dismissed even though defendants also fail to show that they have title.
Plaintiffs contend further that the Sheriff's Deed dated January 1, 1870, is admissible in evidence under the Ancient Document Statute, contained in LSA-R.S. 13:3728-13:3731, and that under that statute there is a prima facie presumption of the genuineness of that deed. They argue that even though the deed was altered in Briant's own handwriting, it must be accepted as it is, and that there is a legal presumption that Briant was the purchaser in that transaction. They contend that defendants had the burden of proving that Briant was not the purchaser, and that they failed to sustain that burden.
LSA-R.S. 13:3728 provides that on the trial of any civil case ancient documents defined in Section 3729 of that Title shall be received in evidence. Section 3729 defines an ancient document as any written instrument "which has been recorded in the conveyance, mortgage, donation, miscellaneous or other official records of any parish of the state ... for ... thirty years or more at the time such instrument is offered in evidence." LSA-R. S. 13:3730 provides:
"It shall be unnecessary for any ancient document, as defined in R.S. 13:3729, to be acknowledged or proven as provided by any act, statute or other law of the state in order for such ancient document to be admitted in evidence, and it shall be unnecessary to prove the execution of such document, the mere fact of such instrument having been recorded for a period of thirty years, as herein provided, being sufficient to establish a prima facie presumption of the execution and of the genuineness of such instrument."
LSA-R.S. 13:3728 et seq., constitute rules of evidence. These sections of the Revised Statutes are found in Chapter 17, of Title 13, under the heading, "Witnesses and Evidence," and they pertain to *470 the admissibility of documents in evidence. The statutory provision for a presumption of the execution and genuineness of such instrument, we think, is to eliminate the necessity of establishing the execution and genuineness of such documents as a prerequisite to introducing them in evidence. We agree that there is a prima facie presumption of the genuineness of these ancient documents, but the presumption is not conclusive, and it is rebuttable. Watkins v. Zeigler, 147 So.2d 435 (La.App. 2 Cir. 1962).
In the instant suit, the prima facie presumption which may have existed that the subject property was conveyed to Briant by the Sheriff's Deed dated January 1, 1870, has been completely offset by the evidence. The evidence shows that the property actually was adjudicated to Miss Fournet, that the Sheriff's Deed was made out originally conveying the property to her, and that Briant subsequently substituted his own name for hers on the deed. There thus is no merit to plaintiffs' argument that the evidence fails to overcome the prima facie presumption provided in LSA-R.S. 13:3730.
Plaintiffs argue that the alterations made by Briant in the Sheriff's Deed have been satisfactorily explained, and that the deed thus should be recognized as conveying title to Briant. In support of that argument, plaintiffs point out that Miss Valerie Fournet was Briant's sister-in-law, and there is no indication that she ever claimed to have been the purchaser of the subject property. No attempt was made by Briant to disguise his handwriting when he substituted his own name for that of Miss Fournet on the deed. The property was assessed to Briant on the tax rolls of St. Martin Parish after the deed was executed and recorded. And, the transaction was indexed in the conveyance records of that parish indicating that title was acquired by Briant.
The case of Jackson v. Bernstein, 39 So.2d 120 (La.App. 2 Cir. 1948), is relied on by plaintiffs to support the above argument. In that case the court gave effect to the wording in a long unchallenged tax sale, where a change had been made in the description. The evidence showed in that case, however, that the change was made in the same handwriting and with the same ink as was used in other parts of the document, and the change was made merely to correct the description to conform to the true facts. The court considered all of the evidence and concluded that "in view of the related facts, including the long lapse of time the deed has been of record without its correctness in any respect being called into question, a strong presumption arises that the change in the description was made by some official having authority so to do in order to conform to the true facts as he understood them." The court thus took into consideration more than the mere passage of a long period of time without a challenge to the document.
The burden of proving that an instrument has been materially altered rests on the party attacking it. Davis v. Jordan, 185 So. 545 (La.App. 2 Cir. 1938); Canovsky v. Gehrsen, 8 La.App. 5 (1927). Once the material alteration has been established, then the burden shifts to the party relying on the instrument to satisfactorily explain that alteration. The alteration is assumed to have been made subsequent to the execution and delivery of the instrument. The party relying on that document has the burden of proving that the alteration was made prior to delivery of it, and that it was made with the consent of the parties. Instruments containing unexplained material alterations are without effect. See Twilbeck v. Twilbeck, 192 So.2d 907 (La.App. 4 Cir. 1966); American Guaranty Co. v. Sunset Realty & Planting Co., 208 La. 772, 23 So.2d 409 (1945); Wheadon v. Turregano, 112 La. 931, 36 So. 808 (1904); Pipes v. Hardesty, 9 La.Ann. 152 (1854).
In the instant suit defendants have shown that the Sheriff's Deed was materially altered, and that the alteration was *471 made by plaintiffs' ancestor, L. P. Briant. The burden thus shifted to plaintiffs, who rely on that deed, to prove that the alteration was made prior to delivery of that document, and that it was made with the consent of the parties.
The law presumes and the evidence establishes that the alteration was made subsequent, not prior, to the delivery of the deed. The evidence fails to show that the alteration was made with the consent of the parties. We agree that the fact that a long period of time has elapsed since the Sheirff's Deed was recorded is a circumstance which should be considered in determining whether the parties consented to the alteration of that deed. We do not believe, however, that the mere fact that no one attacked the deed during that period of time is sufficient to justify a holding that the parties consented to the change. Plaintiffs concede that they are not in possession of the property, and the record does not show whether they committed any overt acts showing that they claimed ownership. The record, in fact, does not show that Miss Fournet or any of her heirs ever knew about the alteration of the Sheriff's Deed.
Our conclusion is that plaintiffs have failed to explain satisfactorily the material alteration which Briant made in the Sheriff's Deed.
Plaintiffs contend, correctly we think, that the recitals in the Sheriff's Sale prevail over those in the Sheriff's return of the writ of fieri facias. See Carroll v. Scheen, 34 La.Ann. 423 (1882); McCall v. Irion, 41 La.Ann. 1126, 6 So. 845 (1889). They argue that since the sale shows that Briant was the purchaser of the subject property, it prevails over the return which shows that Miss Fournet was the vendee.
Each of the cited cases, Carroll and McCall, involved a statement made by the sheriff in his return of the writ and a conflicting statement made by the same official in the Sheriff's Deed. The court held in each case that the statement in the deed prevailed. In the instant suit there was no conflict in the statements made by the sheriff in the return and in the Sheriff's Deed. In both of those documents the sheriff recited that the subject property was sold to Miss Valerie Fournet. The conflict in those two documents arose later when L. P. Briant altered the Sheriff's Sale by substituting his own name for that of Miss Fournet.
In our opinion the Carroll and McCall cases are not applicable here. Since the evidence establishes that the Sheriff's Deed was altered by Briant after it was executed, the statements in that deed will not prevail over those contained in the return.
Our ultimate conclusion is that plaintiffs' ancestor, Lassaline P. Briant, did not acquire any title or right of ownership to the subject property by virtue of the Sheriff's Sale dated January 1, 1870. Since Briant never acquired the ownership of that property, we find no error in the judgment of the trial court which decrees that plaintiffs have no right of ownership in the subject property. In view of that finding, it is unnecessary for us to inquire into the title of defendants.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.