322 So.2d 112 (1975)
Victoria Prudhomme OSBORN et al.
v.
C. N. JOHNSTON et al.
No. 56158.
Supreme Court of Louisiana.
November 3, 1975.
Rehearing Denied December 5, 1975.
*113 William O. Bonin, Landry, Watkins, Cousin & Bonin, New Iberia, for plaintiffs-applicants.
Jack C. Caldwell, Aycock, Horne, Caldwell, Coleman & Duncan, Franklin, John E. Parker, New Orleans, for defendants-respondents.
DIXON, Justice.
In this petitory action, the court of appeal affirmed the judgment of the trial *114 court in rejecting the demands of the plaintiffs, holding that the plaintiffs' ancestor had acquired no title or right of ownership by virtue of a sheriff's deed on which plaintiffs base their claim. Osborn v. Johnston, 308 So.2d 464.
Writs were granted because of doubts as to the interpretation of the "ancient documents" statute, R.S. 13:3728-3730.
Plaintiffs are the heirs of Lassaline P. Briant; defendants are the assignees and mineral lessees of James and Alcide Owens. The property involved is an undivided interest in:
Lot 3, Section 1, and Lots 2 and 3, Section 2, Township 13 South, Range 11 East, Southwestern Land district, St. Martin Parish, Louisiana.
Neither plaintiffs nor defendants are in possession of the property, which apparently became swamp land shortly after the civil war. The issue, therefore, is: have the plaintiffs shown a better title to the land than the defendants?
C.C.P. 3651 and 3653 describe the petitory action as follows:
Art. 3651. Petitory action
The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership.
Art. 3653. Same; proof of title
To obtain a judgment recognizing his ownership of the immovable property or real right, the plaintiff in a petitory action shall:
(1) Make out his title thereto, if the court finds that the defendant is in possession thereof; or
(2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof.

The Ancient Document
Plaintiffs' claim to title is based on a sheriff's deed dated January 1, 1870 and recorded on the fourteenth day of the same month, purporting to convey the property to Lassaline P. Briant. The name of the vendee, Lassaline P. Briant, is written over another name in the instrument; the other name, almost obscured, can be determined to be "Miss Valerie Fournet". (The proces verbal of the sheriff's sale recited that Miss Valerie Fournet was the vendee, and that L. P. Briant and Z. T. Fournet were her securities for the payment of the price of the 12-months credit sale.)
The deeds, of course, were written in pen and ink, and the record shows that Briant's name was superimposed over Valerie Fournet's in Briant's own hand, that the balance of the deed was not written in Briant's hand; that Briant, himself a deputy clerk, "filed" the proces verbal on January 10, 1870; that the sheriff's deed was "recorded" by another deputy recorder on January 14, 1870.
R.S. 13:3728-3731 provide:
3728. Ancient document; admissible in civil suits
On the trial of any civil case in any court ancient documents, defined in R.S. 13:3729, shall be received in evidence.
3729. Same; definition
An ancient document is defined to mean any instrument written, including maps, plats and surveys, which has been recorded in the conveyance, mortgage, donation, miscellaneous or other official records of any parish of the state for a period of thirty years or more at the time such instrument is offered in evidence.

*115 3730. Same; acknowledgment or proof of authenticity not required.
It shall be unnecessary for any ancient document, as defined in R.S. 13:3729, to be acknowledged or proven as provided by any act, statute or other law of the state in order for such ancient document to be admitted in evidence, and it shall be unnecessary to prove the execution of such document, the mere fact of such instrument having been recorded for a period of thirty years, as herein provided, being sufficient to establish a prima facie presumption of the execution and of the genuineness of such instrument.
3731. Same; admissibility of copies
It shall be unnecessary to offer in evidence the original copy of any ancient document, as defined in R.S. 13:3729, even though such original copy may be available, but in all cases copies of ancient documents made either from the original or from the recordation thereof shall be received in evidence if such copy offered in evidence be certified as a true copy by the custodian or by any legal deputy of the custodian of the records from which such copy is made.
The court of appeal properly held that the statutory presumption of genuineness of ancient documents is not conclusive, and is rebuttable. However, because the instrument contains a "material alteration" (the change of the name of the vendee from Fournet to Briant) "(t)he burden thus shifted to plaintiffs, who rely on that deed to prove that the alteration was made prior to delivery of that document, and that it was made with the consent of the parties." 308 So.2d 464, 471. This interpretation seriously impairs the efficacy of the ancient documents act.
In the absence of statutes, many American jurisdictions have formulated theories for establishing the authenticity of writings by circumstantial evidence. Documents can be sufficiently authenticated by proof of 30 years age, unsuspicious appearance, and proof of production from custody natural for such documents. Sec. 223, McCormick, Law of Evidence, 2d ed., West Publishing Co. Therefore, in the absence of our statute, the "material alteration" in the instrument would mean that it would not be authenticated without more direct evidence. Muehrcke v. Behrens, 43 Wis.2d 1, 169 N.W.2d 86 (1969).
Statutes in some states have couched their ancient documents rule in terms of rebuttable presumptions. For example, Oregon Revised Statutes 41, sec. 360(34) states:
41.360 Disputable presumptions. All presumptions other than conclusive presumptions are satisfactory, unless overcome. They are disputable presumptions, and may be controverted by other evidence, direct or indirect, but unless so overcome, the jury is bound to find according to the presumption. The following are of that kind:
(34) A document or writing more than 20 years old is genuine, when it has been generally acted upon as genuine by persons having an interest in the question, and its custody has been satisfactorily explained.
Similarly, Montana's ancient documents statute is discussed in King v. Schultz, 141 Mont. 94, 375 P.2d 108 (1962) where the court held:
The ancient document rule does not change the basis for admission of evidence other than as to the genuineness of the document. The rule is embodied in RCM 1947, § 93-1301-7, subd. 34, which provides:
"All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind: * * *
"34. That a document or writing more than thirty years old is genuine, when the same has been since generally *116 acted upon as genuine, by persons having an interest in the question, and its custody has been satisfactorily explained."
In Cook v. Hudson, 110 Mont. 263, 284, 285, 103 P.2d 137, 147, the court considered the foregoing presumption in this language:
"* * * plaintiffs' Exhibits `G' and `H', Grant's notices of location of water right, were dated and acknowledged October 31, 1892, recorded November 2nd following and recite on the face thereof that the appropriations were made as of October 20, 1892. The recordation of the notice and the date on which the appropriation was alleged to have been made was one day prior in each instance to the date shown by the Severin notice. The presumption is that this record is genuine (subdiv. 34, sec. 10606, Rev. Codes 1921 [now R.C.M.1947, § 93-1301-7]), and its contents are prima facie evidence of the facts therein stated." Emphasis supplied.
The Louisiana statute, however, has been designed especially for our system of recordation of instruments affecting the title to land. The custodial requirement is satisfied, because our statute applies only to instruments recorded in the official records for more than 30 years. R.S. 13:3729. Our statute does not require that the ancient instrument be "regular" or "unsuspicious". The combination of age and recordation not only authenticates the old document, making it admissible in evidence, but also, by the terms of the act, establishes "a prima facie presumption of the execution and of the genuineness of such instrument."
The only Louisiana case found which interprets the act so stated, and held that the burden of proof (to establish that an ancient document is not genuine) is upon "those who assail an ancient document to overcome the presumption of its prima facie validity". Watkins v. Zeigler, 147 So. 2d 435, 438 (La.App.2d Cir. 1965).
Moreover, our ancient documents statute even dispenses with the necessity of offering the original instrument; copies made from the recordation of the ancient document are admissible. The copy of the sheriff's deed involved in the instant case shows only Briant to be the vendee, was indexed in Briant's name, and shows no irregularity.
The superimposition of Briant's name over that of Miss Fournet is not such an alteration that could not have an innocent explanation. It was recorded and indexed with no effort at concealment on the public records; it was assessed for tax purposes to Briant the following year and subsequently to the state for non-payment of taxes, in the name of Briant. Miss Fournet was Briant's sister-in-law. Briant is named as one of her securities for the payment of the purchase price in the proces verbal. The deed was not recorded until four days after the recordation of the proces verbal. It is entirely possible that Miss Fournet freely consented to the substitution of Briant's name for hers on the deed, for one of a number of valid reasons. The record contains no evidence whatsoever that the substitution of the name was not with the knowledge and consent of Miss Fournet.
To hold that the burden of proving the regularity of the ancient instrument falls on the one relying on the instrument would emasculate the act. The party attacking a document covered by R.S. 13:3728-3731 must overcome the "prima facie presumption" of its validity. Defendants have not borne that burden.

Briant's Loss of Ownership
Nevertheless, we find that plaintiffs cannot prevail, for reasons not reached by the courts below.
In 1873, the land in dispute was adjudicated to the state for failure to pay taxes. The name of L. P. Briant appears as the *117 owner. In 1889 the land in dispute was again adjudicated to the state for failure to pay taxes. The name of James Owens appears as the owner. In 1891 the state conveyed the land to the Atchafalaya Basin Levee District. In 1896 the Levee District conveyed the land to Pierre Angelloz. Pierre Angelloz conveyed to Arthur Angelloz in 1899, who conveyed to James and Alcide Owens in 1902. Defendants claim through the Owens.
Plaintiffs present two positions, arguing alternatively that the property either never left the patrimony of Briant or, if it did leave Briant's patrimony, that it was returned by operation of law.
In arguing that the property never left Briant's patrimony, plaintiffs contend that because part of the land sold in the St. Martin parish tax adjudication is located in Iberia parish the tax adjudication of 1872 is an absolute nullity. This argument ignores Article 10, section 11 of the (See Art. 7, sec. 25(C) La.Const.1974) Constitution of 1921:
No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recordation of the tax deed, if no notice is given.
In King v. Moresi, 223 La. 54 (1953), 64 So.2d 841, we held:
This constitutional peremption applies to all tax sales except those specifically excepted therein and those where the tax debtor remains in corporeal possession of the premises. The language used is very broad. This constitutional provision announces the public policy of this State to set at rest tax titles once and for all. 64 So.2d at 842.
There is no evidence in the record before us to indicate that the taxes had been paid, nor did the tax debtor remain in corporeal possession of the property. The five year peremption period having long since passed, plaintiffs cannot now attack the validity of the tax adjudication on this basis. Plaintiffs' argument that the property never left Briant's patrimony is wholly without merit.
In arguing alternatively that if the land left Briant's patrimony it was returned by operation of law, plaintiffs contend that, though the land was adjudicated from Briant to the state, it was returned by the operation of Article 10, section 20 of the Constitution of 1921:
§ 20. Tax Forfeitures prior to 1880; annulment
Section 20. Whenever any immovable property shall have been forfeited or adjudicated to the State for the non-payment of taxes due prior to January 1st, 1880, and the State shall not have sold or disposed of same, nor dispossessed the tax debtor, or his heirs, successors or assigns, prior to the adoption of this Constitution, it shall be conclusively presumed, that such forfeiture or adjudication was irregular and null, or that the property has been redeemed; and the State, and its assigns subsequent hereto, shall forever be estopped from setting up any title to such property by virtue of such forfeiture or adjudication; provided, that for a period of three years from the adoption of this Constitution the State shall have the right to enforce the payment of any unpaid taxes for the non-payment of which the property was forfeited to the State.
It is clear from this provision that in order to prevail plaintiffs must take the position that the state has not "sold or disposed of" the property. The record shows otherwise. Act 97 of 1890 conveyed the lands to the Atchafalaya Basin Levee District and directed the auditor and the registrar of *118 lands to issue conveyances; this land was so conveyed (by the auditor) December 29, 1891.
It is contended that the conveyance from the Levee Board to Pierre Angelloz was a mere quit-claim and that the Levee Board had no rights in the property. The act of transfer contains the words "quitclaim" in the heading; the language within the act is as follows:
Be it Known: That for and in consideration of the sum of One Hundred & Two Dollars and Ninety Nine Cents, ($102.99/100) lawful money of the United States of America paid, and receipt of which is hereby acknowledged, the Board of Commissioners for the Atchafalaya Basin Levee District acting through its President does by these presents transfer, convey and quit claim unto
Pierre Angelloz all the rights, titles and privileges acquired by the said Board from the State of Louisiana. . .
Even if this instrument is a "quit-claim", we find that it effectively conveyed to Angelloz the ownership of the land, because the Levee Board was the owner. A quitclaim deed conveys whatever title the grantor owned. Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225 (1947).
Plaintiffs take the position that, for two separate reasons, the Levee Board did not own the property conveyed to Pierre Angelloz.
First, they argue that the donation from the state to the Levee Board transferred only rights obtained by the state in the 1889 tax adjudication, which plaintiffs contend is an absolute nullity, and not rights the state obtained in the 1873 tax adjudication.
We need not decide whether the 1889 tax adjudication is a nullity because we find that the state conveyed to the Levee Basin all rights in the property regardless of how or when the state acquired them.
By act 97 of 1890, the legislature provided for the donation of transfer to the Atchafalaya Basin Levee District all lands then belonging to the State within the limits of the Levee District.
The conveyance by the auditor to the Levee District reads as follows:
I, O. B. Steele, Auditor of Public Accounts, under and by virtue of the authority in me vested by Act 97 of 189-Section 11, do hereby transfer and convey to the Board of Commission of the Atchafalaya Basin Levee District, all right, title and interest of the State of Louisiana, in and to the lands situated in the Parish of St. Martin and embraced within the limits of said Levee District which said lands have been adjudicated to the State for unpaid taxes of 1880 and subsequent years and not redeemed within the time prescribed by law. Said lands being more fully described in the list (attached hereto and made a part hereof.
In evidence, whereof I have hereto set my signature and seal of office on the day and date first above written.
Signed O. B. STEEL AUDITOR (SEAL)
This language clearly transfers "all right, title and interest of the State of Louisiana". The clause referring to the unpaid taxes of "1880 and subsequent years" does not limit the conveyance to those lands the titles to which were acquired for taxes subsequent to 1880. Act 97 of 1890 did not limit the conveyance. As the deed expresses, the lands conveyed were "more fully described" in the attached list, which described the property involved here. The reference to lands described for taxes after 1880 might accurately describe some parcels, but did not limit the conveyance to certain titles of land described particularly in attached list.
Thus the state transferred all of its rights regardless of when they were acquired; *119 the state acquired ownership of this land in the tax adjudication of 1873.
Next, plaintiffs argue that the conveyance to the levee district was invalid because the act authorizing such donations was violated.
Section 11 of act 97 of 1890, argue plaintiffs, required conveyances to the levee district to be signed by both auditor and register of the state land office. Plaintiffs take the position that the conveyance here involved is invalid because it was signed only by the auditor.
However, as defendants point out, this defect is cured by act 316 of 1926:
Section 1. Be it enacted by the Legislature of Louisiana, That all deeds of transfer heretofore made by either the Auditor or Register of the State Land Office of this State to the Atchafalaya Basin Levee District,
. . . . . .
under the various Acts creating said Levee Districts, or other acts of the General Assembly of Louisiana, by which lands were granted to said districts, be and the same are hereby ratified, quieted and confirmed, the same as if all such deeds had been signed by both the Auditor and Register of the State Land Office of this State, provided this Act shall in no way affect the legal rights of persons claiming any parts of said lands under, and by virtue of Patents acquired from the State of Louisiana.
Plaintiffs' only response is that act 237 of 1924 had the effect of repealing act 97 of 1890 and therefore that the 1926 act could no longer cure the failure to comply with act 97 of 1890. Plaintiffs cite State v. Grace, 187 La. 1028 (1936), 175 So. 656.
Act 237 of 1924 had the effect of allowing public bidding on land forfeited to the state. The court in State v. Grace, supra, merely held that such land could no longer be directly donated to the Atchafalaya Basin Levee Board inasmuch as public bidding was required. The act did not purport to affect transactions completed previous to its effective date. This was recognized by the court in Grace:
The Act of 1924 will not destroy rights which have accrued to persons under previous enactments nor will it have effect on land held by the State within the various Levee Districts. The only effect the Act of 1924 can possibly have would be the disposition of property owned by the State and not reserved to one of the various Levee Districts.
Thus, plaintiffs' argument that the property returned by operation of law to Briant's patrimony is wholly without merit. Since they have no title, plaintiffs cannot prevail.
The judgments of the court of appeal and district court are affirmed at plaintiffs' cost.