David AFFELDT, Joyce Affeldt and
Walter Alan Affeldt,
Plaintiffs-Appellants-Petitioners,

v.

GREEN LAKE COUNTY, Defendant-Respondent.

Supreme Court

*No. 2009AP2315. Oral argument March 2, 2011.
—Decided July 6, 2011.*

2011 WI 56

(Also reported in 803 N.W.2d 56.)

104

For the plaintiffs-appellants-petitioners there were briefs by Attorney *Kristine A. Snow, Todd A. Snow,* and *GRANT, SNOW, SNOW, S.C.,* Waupun, and oral argument by Ms. Snow.

For the defendant-respondent there was a brief and oral argument by *John B. Selsing,* Corporation Counsel, Berlin.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals, *Affeldt v. Green Lake County,* No. 2009AP2315,

unpublished slip op. (Wis. Ct. App. July 28, 2010), that affirmed an order of the Green Lake County Circuit Court[1] granting summary judgment in favor of Green Lake County (the County).

¶ 2. David Affeldt, Joyce Affeldt, and W. Alan Affeldt (the Affeldts) objected to the County's removal of trees and fences along their farm property on County Highway B (Highway B) in the township of Green Lake. The Affeldts sought a judgment declaring that the trees and fences are not within the County's right-of-way and enjoining their removal. The County moved for summary judgment, and the circuit court granted the County's motion. The circuit court determined that the Affeldts failed to set forth sufficient evidence to rebut the presumption under Wis. Stat. § 82.31(2)(a) (2007–08)[2] that Highway B is 66 feet (four rods) wide.

¶ 3. The Affeldts appealed, and the court of appeals affirmed, though on different grounds.

¶ 4. The Affeldts petitioned this court for review, and we accepted. We now reverse the decision of the court of appeals and remand to the circuit court for further proceedings.

¶ 5. The central issue presented in this case is whether the Affeldts have set forth sufficient evidence to raise a genuine issue of material fact concerning the width of Highway B. More specifically:

(1) Have the Affeldts set forth sufficient evidence demonstrating that there is a genuine issue as to whether Highway B is a recorded highway that has been laid out?

[1] The Honorable William M. McMonigal presided.

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

(2) Assuming Highway B has been laid out but not recorded, have the Affeldts set forth sufficient evidence to rebut the presumption under Wis. Stat. § 82.31(1) that Highway B was laid out four rods wide?

(3) Assuming Highway B has not been laid out and instead was created by user, have the Affeldts set forth sufficient evidence to rebut the presumption under Wis. Stat. § 82.31(2)(a) that Highway B is four rods wide?

¶ 6. Alternatively, if we conclude that the Affeldts failed to set forth sufficient evidence to rebut the presumption that Highway B is four rods wide, the Affeldts ask us to decide whether the presumption's retroactive application to Highway B constitutes a taking of the Affeldts' property without just compensation in violation of the Fifth Amendment of the United States Constitution and Article I, Section 13 of the Wisconsin Constitution.

¶ 7. We conclude that the circuit court improperly granted summary judgment to the County. The Affeldts have set forth sufficient evidence to raise a genuine issue of material fact concerning the width of Highway B. Specifically, the Affeldts have set forth specific facts showing that there is a genuine issue as to whether Highway B is a recorded highway that has been laid out. Moreover, assuming Highway B has been laid out but not recorded, the Affeldts have set forth specific facts that, if proven, are sufficient to rebut the presumption that Highway B was laid out four rods wide. Finally, assuming Highway B has not been laid out and instead was created by user, the Affeldts have set forth specific facts that, if proven, are sufficient to rebut the presumption that Highway B is four rods wide.

108

¶ 8. Because we conclude that the Affeldts have set forth sufficient evidence to rebut the presumption that Highway B is four rods wide, we do not reach the question of whether the presumption's retroactive application to Highway B amounts to an unconstitutional taking of the Affeldts' property.

## I. FACTUAL BACKGROUND

¶ 9. The Affeldts own two farms in the township of Green Lake, on opposite sides of Highway B.[3] W. Alan Affeldt and his wife, Joyce Affeldt, live on the north side of Highway B in a farmhouse built by his grandparents in the early 1920s. In 2005, their son, David Affeldt, purchased a farm on the south side of Highway B. It is undisputed that Highway B has existed in its same location since the late 1800s. It is further undisputed that the County has maintained Highway B for at least the past ten years.

¶ 10. In January 2008, the Green Lake County Highway Department scheduled a reconstruction and maintenance project on Highway B. The project consisted of the resurfacing of the road, the clearing of ditches, and the laying of underground utilities. In order to accomplish its project, the County deemed it necessary to remove all trees, fence line, and other encroachments within the County's right-of-way.

¶ 11. The parties dispute the time and manner in which the Affeldts received notice of the reconstruction project. Nevertheless, in early 2008, the Affeldts became aware of the County's intent to remove trees and fence line from along the sides of Highway B. The Affeldts repeatedly objected to the removal, contending

---

[3] Highway B to the west of the Affeldts' property lies in the township of Marquette.

that the trees and fences along their properties were not within the County's right-of-way. According to the County, the Affeldts were the only affected property owners on Highway B who did not approve of the removal of the trees and fences.

## II. PROCEDURAL POSTURE

¶ 12. On April 15, 2008, the Affeldts filed a complaint against the County, seeking a judgment declaring that the trees along Highway B are not within the County's right-of-way. The Affeldts requested the circuit court to enjoin the County's removal of the trees, alleging that such removal would amount to an unconstitutional taking of the Affeldts' property.

¶ 13. On that same date, the Affeldts moved the circuit court for an order temporarily restraining and enjoining the County from removing, cutting, damaging, or destroying any trees on the Affeldts' property. The circuit court denied the Affeldts' motions, and the County proceeded with its reconstruction project as scheduled.

¶ 14. In its answer to the Affeldts' complaint, the County denied that the trees were the Affeldts' property and requested the circuit court to dismiss the complaint.

¶ 15. On November 6, 2008, the County moved for summary judgment, arguing that the removal of trees, fences, and other encroachments along Highway B lies entirely within the County's presumed four rod right-of-way. Pursuant to Wis. Stat. §§ 83.01(7)(a) and (b) and 86.04(1), respectively, the County asserted it has the duty to maintain Highway B and the authority to remove any encroachments within its right-of-way. The County further maintained that the Affeldts are unable

to present any documentation or facts that would rebut the presumption that Highway B is four rods wide.

¶ 16. The County supported its motion for summary judgment with affidavits by Duane Prachel (Prachel), the Superintendent of the Green Lake County Highway Department, and Jason Ingram (Ingram), a registered land surveyor. Prachel averred that Highway B has existed and been maintained by the County as a four rod right-of-way for at least 20 years. Consistent with the County's established policy and practice, Prachel asserted, all obstacles have to be removed from the right-of-way in order for the County to carry out Highway B's reconstruction and maintenance.

¶ 17. Ingram reported on and prepared a survey of Highway B and expressed his opinion that Highway B's existence dates back to the late 1800s. Based upon his review of the statutes and various documents from the Green Lake County Highway Department, the Green Lake County Surveyor, Green Lake Register of Deeds Office, and the townships of Marquette and Green Lake, Ingram further averred that Highway B is presumptively four rods wide.

¶ 18. In his report attached to his affidavit, Ingram acknowledged "not finding any written record of [Highway B's] location or width" but nevertheless opined that a four rod width is the "best fit" for Highway B: "[T]he fact that this was a 'major' roadway in the mid 1800's leads us to presume that 4 rods is the best determination of the right of way width . . . ." Ingram recognized that "ancient fences" along the south side of Highway B varied from zero to six feet north of the four rod right-of-way but dismissed the value of such information, explaining that the location of Highway B's fence line lacked consistency.

111

¶ 19. On December 11, 2008, the Affeldts filed a brief in opposition to the County's motion for summary judgment. The Affeldts argued that summary judgment is inappropriate because genuine issues of material fact preclude the circuit court from being able to determine, as a matter of law, that Highway B is four rods wide. In the alternative, the Affeldts argued that the application of the four rod presumption to Highway B constitutes a taking of the Affeldts' property without just compensation in violation of the federal and state constitutions.

¶ 20. The Affeldts attached several affidavits to their brief in opposition to the County's motion for summary judgment, including one by Dennis Steinkraus (Steinkraus), a licensed land surveyor, and one by each of the three Affeldt plaintiffs. Steinkraus reviewed Ingram's survey map and then prepared one of his own, in which he illustrated the fence line and several trees and tree stumps along Highway B that exist within the County's alleged four rod right-of-way.

¶ 21. In his affidavit, W. Alan Affeldt stated that he has lived in the same farmhouse on Highway B since he was born on December 7, 1946. He averred that the trees and fences identified in Steinkraus' survey map have existed in the same location for as long as he can remember. In support, W. Alan attached to his affidavit an outdoor photograph of himself as a baby and another taken in 1962, both of which reveal full-grown trees bordering Highway B. In addition, W. Alan attached to his affidavit an aerial photograph allegedly taken in the late 1940s, which shows a fence line and several trees on either side of Highway B. W. Alan averred that that particular fence line was the same one that existed at the time this lawsuit began.

¶ 22. W. Alan also explained that as early as 1954, a machine shed had been located on his property, 26 feet

from the centerline of Highway B. In 1992, he replaced that shed with a new one which he asserts lies 32 feet from the centerline.

¶ 23. Finally, W. Alan averred that his family has always mowed its lawn up to the gravel shoulder of Highway B and that in the 62 years he has lived at his property, he has never seen the County maintain the trees or fence line along Highway B, nor mow the lawn or plow snow to its full alleged four rod right-of-way.

¶ 24. In her affidavit, Joyce Affeldt echoed many of her husband's statements. In addition, Joyce opined that Highway B was never laid out. In support, she attached to her affidavit a copy of the Green Lake County Board proceedings from November 21, 1939, which purportedly reveals the adoption of a resolution to add Highway B to the system of town roads maintained by the County.

¶ 25. David Affeldt similarly averred that during his lifetime, he has never seen the County maintain Highway B beyond the shoulders of the highway, other than mowing the grass on the south side up to the fence line. David attached to his affidavit a photograph from January 2008 which, according to David, shows that the County plowed snow only seven or eight feet beyond the paved portion of Highway B.

¶ 26. After ordering supplemental briefs and hearing arguments, on July 22, 2009, the circuit court granted the County's motion for summary judgment. Finding that Highway B, "a significant cross-county thoroughfare, has long since left the appearance of rural, has been paved for a long, long time and has been maintained by the [C]ounty on some basis," the circuit court applied to Highway B the four rod presumption under Wis. Stat. § 82.31(2)(a). Distinguishing these facts from those in *Threlfall v. Town of Muscoda,* 190

Wis. 2d 121, 527 N.W.2d 367 (Ct. App. 1994), the circuit court determined that the Affeldts failed to set forth sufficient evidence to rebut the presumption that Highway B is four rods wide.

¶ 27. In making its determination, the circuit court acknowledged that it was "going, to some degree, slightly outside the bounds of summary judgement . . . ." In particular, the circuit court noted the possible existence of ancient fence lines along Highway B but concluded that "those lines of demarcation, whatever form that they come in, fences or tree lines, are not sufficiently consistent." The circuit court was persuaded that the four rod presumption promotes safety and standardized highway maintenance:

> The court believes that there is merit to the [C]ounty's position that every 100 foot property owner cannot have a different fence line[;] otherwise the highway system would result in chaos and not enhance management but undermine proper management from both road maintenance and safety for those who use it, so even though the court may be venturing slightly outside of the bounds, the court believes that granting the summary judgement is appropriate in favor of the [C]ounty.

¶ 28. The Affeldts appealed, and the court of appeals affirmed, though on different grounds. *Affeldt*, No. 2009AP2315, unpublished slip op. The court of appeals concluded that the County is entitled to summary judgment based upon the "undisputed" fact that Highway B is a recorded, laid out highway and hence has a four rod right-of-way as a matter of law. *Id.*, ¶¶ 13–15. According to the court of appeals, "[t]he evidence demonstrating that Highway B is recorded and laid out derives directly from Resolution No. 38 of

114

the Green Lake County Board minutes dated November 21, 1939," *id.*, ¶ 12, the same resolution relied upon by Joyce Affeldt in her affidavit, *id.*, ¶ 13. In a footnote, the court of appeals acknowledged, but then dismissed, the Affeldts' argument that the resolution is insufficient to establish that Highway B was laid out. *Id.*, ¶ 13 n.4 (distinguishing the resolution in this case from that in *Muehrcke v. Behrens*, 43 Wis. 2d 1, 169 N.W.2d 86 (1969)).

¶ 29. The court of appeals reasoned that because Highway B is indisputably a recorded, laid out highway, it conclusively has a four rod right-of-way pursuant to Wis. Stat. § 82.50(1). *Affeldt*, No. 2009AP2315, unpublished slip op., ¶ 15. Therefore, the court of appeals determined, the rebuttable four rod presumption in Wis. Stat. § 82.31 is not even triggered:

> We acknowledge that in some circumstances, a rebuttable presumption exists. However, the circumstances giving rise to a presumption are not present here. The legislature provided for the presumption in cases where records were unavailable to show the road was recorded and laid out, *see* § 82.31(1), or where the road is an unrecorded highway, *see* § 82.31(2). Here, a record exists of the resolution to create Highway B, including a description of its location, the vote count, passage, and adoption of Highway B as a town highway.

*Id.*, ¶ 14.

¶ 30. The Affeldts petitioned this court for review, which we accepted on October 27, 2010. We now reverse the decision of the court of appeals and remand to the circuit court for further proceedings.

## III. STANDARD OF REVIEW

■

¶ 31. This case comes to us on summary judgment. Whether the circuit court properly granted summary judgment to the County is a question of law that we review de novo, applying the same standards used by the circuit court and set forth in Wis. Stat. § 802.08. *See Konneker v. Romano*, 2010 WI 65, ¶ 22, 326 Wis. 2d 268, 785 N.W.2d 432; *Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶ 24, 323 Wis. 2d 682, 781 N.W.2d 88.

■

¶ 32. This case also requires us to consider the interplay between the modern highway statutes and those that existed at the time a highway was purportedly laid out. Statutory interpretation presents a question of law that we review independently while benefitting from the lower courts' analyses. *Konneker,* 326 Wis. 2d 268, ¶ 24.

## IV. ANALYSIS

¶ 33. We conclude that the County is not entitled to summary judgment because the Affeldts have set forth sufficient evidence to raise a genuine issue of material fact concerning the width of Highway B. We begin our analysis by outlining the statutory framework for determining the width of Highway B. We then apply the summary judgment methodology to that framework.

### A. Statutory Framework for Determining the Width of Highway B

¶ 34. As the County points out, and the Affeldts do not dispute, the County has the duty to maintain Highway B. *See* Wis. Stat. § 83.01(7)(a), (b). Further-

more, the County has the authority to remove any encroachment upon Highway B's right-of-way. *See* Wis. Stat. § 86.04(1). The central issue in this case is the width of Highway B's right-of-way. If Highway B is a full four rods wide, as the County contends, then the County was within its authority to remove the trees and fence line along the Affeldts' property.

## 1. Wisconsin Stat. § 82.31

¶ 35. Wisconsin Stat. § 82.31 sets forth the presumptive width of existing highways.[4] Section 82.31 distinguishes between "Recorded Highways" in subsection (1) and "Unrecorded Highways" in subsection (2). We examine these subsections in turn.

---

[4] Wisconsin Stat. ch. 82 is entitled "Town Highways," but the legislative history informs us that § 82.31 should not be limited in scope to town highways.

Wisconsin Stat. ch. 82 is the result of the legislature's significant reorganization of Wis. Stat. chs. 80 and 81 (2001–02). *See* 2003 Wis. Act 214, prefatory note. As recognized by the Joint Legislative Council's Special Committee on Recodification of Town Highway Statutes, former chapters 80 and 81 dated back to the 1800s and had been updated piecemeal, without regard to internal organization. *Id.* The legislature organized former chapters 80 and 81 by moving most of their provisions into a new chapter 82. *Id.* In doing so, the committee made clear that substantive changes were not intended unless specifically noted in the Act. *Id.*

Wisconsin Stat. § 82.31, in particular, is a recodification of Wis. Stat. § 80.01(1m)-(2) (2001–02). 2003 Wis. Act 214, §§ 21–23. Former chapter 80 was entitled generally "Laying Highways" and was not limited in scope to town highways. 2003 Wis. Act 214 does not indicate a substantive change between Wis. Stat. § 82.31 and Wis. Stat. § 80.01(1m)-(2) (2001–02). *See id.*

¶ 36. Wisconsin Stat. § 82.31(1), "Recorded Highways," provides:

> Any recorded highway that has been laid out under this chapter is a legal highway only to the extent that it has been opened and worked for 3 years. Any laid out highway that has not been fully and sufficiently described or recorded or for which the records have been lost or destroyed is presumed to be 66 feet wide.

Hence, the relevant determination under § 82.31(1) is whether the highway is (1) a "recorded highway that has been laid out" or (2) laid out but not "fully and sufficiently described or recorded" or laid out but the records for which "have been lost or destroyed." In the second instance, the laid out highway is presumed to be 66 feet (four rods) wide. § 82.31(1).

¶ 37. Wisconsin Stat. § 82.31(2) governs "Unrecorded Highways" and states, in relevant part: "(a) . . . any unrecorded highway that has been worked as a public highway for 10 years or more is a public highway and is presumed to be 66 feet wide." Hence, the relevant determination under § 82.31(2)(a) is whether the highway is unrecorded but "has been worked as a public highway for 10 years or more." If so, the highway is presumed to be 66 feet (four rods) wide. § 82.31(2)(a).

¶ 38. Accordingly, in applying Wis. Stat. § 82.31 to Highway B, the analysis proceeds as follows:

(1) Is Highway B a "recorded highway that has been laid out"? *See* § 82.31(1).

(2) Is Highway B a "laid out highway" but not "fully and sufficiently described or recorded" or the records for which "have been lost or destroyed"? *See* § 82.31(1). If so, Highway B is presumed to be four rods wide. *See id.*

118

(3) Is Highway B an "unrecorded highway that has been worked as a public highway for 10 years"? *See* § 82.31(2)(a). If so, Highway B is presumed to be four rods wide. *See id.*

¶ 39. Wisconsin Stat. ch. 82 defines several of the aforementioned terms, including "[l]aid out," § 82.01(4), "[r]ecorded highway," § 82.01(8), and "[u]nrecorded highway," § 82.01(10). Chapter 82 then outlines the procedure for laying out, altering, or discontinuing any highway, and then recording the resulting order, *see* §§ 82.10–82.29. That procedure, however, is not determinative in cases like this, in which the highway at issue was purportedly laid out decades or even a century earlier. In this case, in order to determine whether Highway B is recorded, laid out, both, or neither, we must look to Wis. Stat. ch. 80 (1939), the statutory procedure that was in force on November 21, 1939, the date on which the County purportedly resolved to lay out Highway B. *See Jacobosky v. Town of Ahnapee,* 244 Wis. 640, 643, 645, 13 N.W.2d 72 (1944) (applying Wis. Stat. ch. 152 (1869) to a May 4, 1871, order that laid out the highway at issue); *Town of Buchanan v. Wolfinger,* 237 Wis. 652, 656, 298 N.W. 176 (1941) (applying Wis. Stat. ch. 19 (1858) to a May 29, 1858, order that purportedly laid out the highway at issue).

2. Wisconsin Stat. ch. 80 (1939)

¶ 40. Wisconsin Stat. § 80.01 (1939) is an early predecessor of Wis. Stat. § 82.31. *See supra* note 4. Wisconsin Stat. § 80.01(1) (1939) explained what the legislature considered to be a recorded, laid out highway in 1939:

> All highways which shall have been laid out by the supervisors of any town, the board of supervisors of any

119

county, or by a committee thereof, or by commissioners appointed by the legislature, or by any other duly constituted authority, and recorded, any portion of which shall have been opened and worked for the term of three years shall be deemed to be and are hereby declared to be legal highways so far as they have been so opened and worked, notwithstanding the law may not have been in all respects complied with in laying out the same. The making of an order laying out any highway by the proper officers and filing the same or a certified copy thereof in the office of the town clerk of the town in which such road is situated shall be deemed a recording of such highway within the meaning of this section.

The first sentence of § 80.01(1) (1939) is substantively identical to the first sentence of Wis. Stat. § 82.31(1); under both, any recorded highway that has been laid out is deemed a legal highway to the extent that it has been opened and worked for three years. Wisconsin Stat. § 80.01(1) (1939), however, went further and defined a recorded highway as "[t]he making of an order laying out any highway by the proper officers and filing the same or a certified copy thereof in the office of the town clerk of the town in which such road is situated . . . ."

¶ 41. The order referenced in Wis. Stat. § 80.01(1) (1939) was further defined by Wis. Stat. § 80.07 (1939), which governed highways laid out by the supervisors of a town, and Wis. Stat. § 80.41 (1939), which governed highways laid out by the board of supervisors of a county. Wisconsin Stat. § 80.07 (1939) provided, in relevant part:

Whenever the supervisors shall lay out . . . any highway they shall make and sign an order therefor, incorporating therein a description of the highway so laid out . . ., and shall cause an accurate survey thereof

120

to be made when necessary; and such order shall be filed and recorded in the office of the town clerk, who shall note the time of recording the same in the record. Such order . . . shall be so filed within ten days after the day fixed by their notice or adjournment for deciding upon such application; and in case said supervisors shall fail to file such order . . . within the ten days aforesaid they shall be deemed to have decided against such application.

Similarly, Wis. Stat. § 80.41 (1939) provided that when a county board of supervisors lays out a highway, "they shall make an order laying out . . . such highway or refusing so to do, which shall be signed by the chairman and county clerk and filed and recorded in the county clerk's office." The order must incorporate a description of the highway and an accurate survey thereof, when necessary. *Id.* Notably, the county board of supervisors "shall also cause a copy of such order to be filed in the office of the town clerk of each town in which any part of the highway laid out . . . lies within ten days after the making of such order." *Id.*

¶ 42. Wisconsin Stat. §§ 80.01(1), 80.07, and 80.41 (1939) teach us that in 1939, a highway was recorded and laid out when the order laying out the highway, or a certified copy thereof, was filed in the office of the town clerk of the town or towns in which the road was situated. Furthermore, the order laying out the highway had to be signed by the town supervisors, Wis. Stat. § 80.07 (1939), or by the chairman of the county board of supervisors and the county clerk, Wis. Stat. § 80.41 (1939). In either case, whether the highway was laid out by the supervisors of a town or the board of supervisors of a county, the order laying out such highway had to incorporate a description of the highway and an accurate survey thereof when necessary. Wis. Stat. §§ 80.07, 80.41 (1939).

121

¶ 43. Finally, relevant to this case, Wis. Stat. § 80.08 (1939) set forth the minimum width of highways laid out in 1939: "[H]ighways shall be laid out at least three rods wide, and when no width is specified in the order the highway shall be four rods wide."

¶ 44. Accordingly, to determine the proper width of Highway B, we now apply the legislative directives for highways laid out and recorded in 1939 to the framework articulated by Wis. Stat. § 82.31. The analysis proceeds as follows:

(1) Is Highway B a "recorded highway that has been laid out"? *See* § 82.31(1). That is, was an order laying out Highway B, or a certified copy thereof, filed in the office of the town clerk of the towns in which Highway B is situated? *See* Wis. Stat. § 80.01(1) (1939). Furthermore, was the order signed by the town supervisors or, alternatively, by the chairman of the county board of supervisors and the county clerk, and did the order incorporate a description of Highway B and an accurate survey thereof if necessary? *See* Wis. Stat. §§ 80.07, 80.41 (1939). If all of the above is answered affirmatively, then the width of Highway B is the width specified in the order and, in any case, must be at least three rods.[5] *See* Wis. Stat. § 80.08

---

[5] Finding that Highway B is indisputably a recorded, laid out highway, the court of appeals concluded that Highway B, as a matter of law, has a four rod right-of-way pursuant to Wis. Stat. § 82.50(1). *Affeldt v. Green Lake Cnty.*, No. 2009AP2315, unpublished slip op., ¶ 15 (Wis. Ct. App. July 28, 2010). The court of appeals' application of § 82.50(1) is in error. Even assuming for the sake of argument that Highway B constitutes a town road, by the statute's plain language, § 82.50 does not apply to town roads existing on October 1, 1992. § 82.50(3); *see also* 1999 Wis. Act 85, § 5 (designating October 1, 1992, as the effective date of rules establishing the minimum geometric

(1939). If no width is specified in the order, then the width of Highway B is four rods. *See id.*

(2) Is Highway B a "laid out highway" but not "fully and sufficiently described or recorded" or the records for which "have been lost or destroyed"? *See* § 82.31(1). If so, Highway B is presumed to be four rods wide. *See id.*

(3) Is Highway B an "unrecorded highway that has been worked as a public highway for 10 years"? *See* § 82.31(2)(a). If so, Highway B is presumed to be four rods wide. *See id.*

■

¶ 45. Still, as the Affeldts point out, the analysis does not necessarily end there. The four rod presumptions under Wis. Stat. § 82.31(1) and (2)(a) are rebuttable. *See Barrows v. Kenosha Cnty.*, 8 Wis. 2d 58, 62–63, 69, 98 N.W.2d 461 (1959); *Threlfall,* 190 Wis. 2d at 128–32. Accordingly, in this case, if either (2) or (3) of the above framework applies, then Highway B is only presumed to be four rods wide, and the Affeldts bear the burden of proving otherwise.

### 3. The rebuttable presumptions under Wis. Stat. § 82.31(1) and (2)(a)

¶ 46. As previously described, Wis. Stat. § 82.31 sets forth two presumptions as to the width of highways, both providing for a width of 66 feet (four rods). The first stated four rod presumption applies to all laid out highways that are not "fully and sufficiently de-

standards for the improvement of existing town roads under Wis. Stat. § 86.266 (1997–98), the predecessor to Wis. Stat. § 82.52, *see* 2003 Wis. Act 214, § 184). It is undisputed that Highway B has been in existence since the late 1800s, and thus, Wis. Stat. § 82.50 does not apply in this case.

scribed or recorded or for which the records have been lost or destroyed . . . ." § 82.31(1). This first stated presumption has existed in the statutes since 1885. *See* § 1, ch. 102, Laws of 1885; *Barrows,* 8 Wis. 2d at 62.

¶ 47. The second stated four rod presumption applies to "any unrecorded highway that has been worked as a public highway for 10 years or more . . . ." Wis. Stat. § 82.31(2)(a). In other words, the second stated presumption applies to all highways, including those created by user, *see Barrows,* 8 Wis. 2d at 62, so long as the highway has been "worked" as a public highway, that is, regularly maintained for public use,[6] for a period of at least ten years. § 82.31(2)(a). This second stated presumption was enacted in 1951. *See* ch. 380, Laws of 1951; *Barrows,* 8 Wis. 2d at 62; *Threlfall,* 190 Wis. 2d at 128. Prior to 1951, the conclusive width of a highway created by user was determined by the limits of the user. *See Nicolai v. Wis. Power & Light Co.,* 227 Wis. 83, 89, 277 N.W. 674 (1938); *Stricker v. Town of Reedsburg,* 101 Wis. 457, 462, 77 N.W. 897 (1899); *Threlfall,* 190 Wis. 2d at 128.

¶ 48. In *Barrows,* this court provided insight into the type of evidence that is sufficient to rebut the four rod presumptions under Wis. Stat. § 82.31(1) and (2)(a). In that case, landowners, the Barrows, instituted inverse condemnation proceedings against Kenosha County to recover damages for an alleged taking of their property as a result of the county's improvement of Wood Road. *Barrows,* 8 Wis. 2d at 60. Kenosha County denied that the Wood Road improvement re-

---

[6].For purposes of Wis. Stat. ch. 82, § 82.01(11) defines the term "worked" as "action of the town in regularly maintaining a highway for public use, including hauling gravel, grading, clearing or plowing, and any other maintenance by or on behalf of the town on the road."

sulted in a taking of the Barrows' property, contending that Wood Road was four rods wide, and the acreage allegedly taken was located within that four rod width. *Id.* at 60–61. The circuit court conducted a bench trial and found that Wood Road was a highway created by user, and thus, under Wis. Stat. § 80.01(2) (1959),[7] its width was only presumed to be four rods. *See id.* at 61–62. The circuit court further determined that the Barrows had sufficiently rebutted the four rod presumption. *See id.* at 62–63. Kenosha County appealed, and this court reversed. *Id.* at 61, 72.

¶ 49. As a preliminary matter, this court agreed with the circuit court that if Wood Road was in fact created by user, then the Barrows sufficiently rebutted the four rod presumption. *Id.* at 63. Specifically, at trial, the Barrows testified that for at least the preceding 45 years, a barbed wire fence had existed along Wood Road on the west side of the Barrows' property and that such fence line established a three rod, rather than four rod, width of Wood Road. *See id.* at 62–63. This court was satisfied that if Wood Road was actually a highway created by user, as found by the circuit court, then the Barrows' testimony as to the fence line would be sufficient to rebut the presumption under Wis. Stat. § 80.01(2) (1959) that Wood Road was four rods wide. *Id.* at 63.

¶ 50. However, this court concluded that the circuit court erred when it found that Wood Road was created by user, as opposed to laid out. *Id.* at 69. The court relied on several surveys kept by Kenosha County, some dating back to the late 1800s, of land on Wood Road to the north and south of the Barrows' property.

---

[7] Wisconsin Stat. § 80.01(2) (1959) is an early predecessor to Wis. Stat. § 82.31(2)(a). *See supra* note 4.

*See id.* at 64–65. All of the surveys showed Wood Road to be four rods wide. *See id.* Noting that continuously since 1885 a statutory presumption has existed that all laid roads are four rods wide, the court could find "no logical explanation . . . which would account for the surveyors in 1899 and 1909 showing Wood Road to be 4 rods wide other than they must have considered it to be a laid road." *Id.* at 67. Furthermore, the court explained, if Wood Road was laid out to the north and south of the Barrows' property, then there was a strong inference that the entire length of Wood Road was laid out: "There is every indication that [Wood Road] was created as a unit and not piecemeal as would be the case if part had been created by user and the other part by the town's laying it out." *Id.*

¶ 51. Finding that Wood Road was a laid out highway for which no town records existed, *see id.* at 63, this court applied the alternative four rod presumption in Wis. Stat. § 80.01(2) (1959) for laid out highways, the records for which "have been lost or destroyed . . . ." *See id.* at 69. The court then concluded that the Barrows failed to produce sufficient evidence to overcome that presumption. *See id.* at 69–71. The court acknowledged that the evidence of the barbed wire fence line, standing by itself, would indicate the width of Wood Road to be three rods along the Barrows' property. *Id.* at 69. Nevertheless, the court concluded that such evidence was insufficient to overcome the presumption that Wood Road was laid out to be four rods wide:

> The record is barren of any evidence which would offer any explanation as to why the town authorities may have laid out the highway so as to be four rods in width both to the north and south of the Barrows' property, but have laid it out as a three-rod width opposite the Barrows' parcel. All of the evidence must

be viewed as a whole in determining whether the existence of the fence line, or lines, at and opposite the Barrows' property, raise a reasonable inference that Wood road was there laid out at a three-rod width. We do not believe that it does and, therefore, the statutory presumption has not been rebutted.

*Id.* at 70–71.

¶ 52. More recently, in *Threlfall,* the court of appeals applied the four rod presumption to an unrecorded highway and concluded that evidence of ancient fences within the four rod width rebutted the presumption. 190 Wis. 2d at 126–27, 131. In that case, the Town of Muscoda cut down trees and shrubs along Sand Branch Road, a gravel road that bisected the property of the plaintiffs, the Baums. *Id.* at 125. The Baums filed a complaint against the town, alleging that the town trespassed on their land and unlawfully cut down their trees and shrubs. *Id.* at 125–26. Much like the Affeldts in this case, the Baums sought a judgment declaring the proper width of Sand Branch Road and enjoining the town from further cutting down trees and shrubs or altering fences on the Baums' property. *Id.* at 126. The circuit court granted the Baums a temporary restraining order. *Id.* However, after a bench trial, the circuit court concluded that the Baums failed to rebut the presumption under Wis. Stat. § 80.01(2) (1993–94)[8] that Sand Branch Road, an unrecorded highway, was four rods wide. *Id.* The Baums appealed, *id.,* and the court of appeals reversed, *id.* at 138.

¶ 53. There was no dispute that Sand Branch Road was an unrecorded highway that had been used by the public and worked by the Town of Muscoda for more than 20 years. *Id.* at 126–27. Thus, Sand Branch

[8] *See supra* note 4.

Road was presumed to be four rods wide. *Id.* at 128 (citing Wis. Stat. § 80.01(2) (1993–94)). Relying on this court's decision in *Barrows,* the court of appeals concluded that the existence of ancient fences within two rods of either side of Sand Branch Road's centerline was sufficient to rebut the presumption that the road was four rods wide. *Id.* at 129–31 (citing *Barrows,* 8 Wis. 2d at 63).

¶ 54. Specifically, at trial, the Baums introduced a survey showing that fences ran along the north and south sides of Sand Branch Road and that the distance between the fences was less than four rods. *Id.* at 129–30. Moreover, landowners previous to the Baums testified that the fence line had existed in substantially the same location as of the mid-1900s. *Id.* at 130–31. The court of appeals acknowledged that the fence width varied at different points along Sand Branch Road but rejected the circuit court's finding that such evidence precluded the establishment of a boundary line:

> The fence is there, and it ranges between 17.9 and 19.0 feet south of the center line. Given the old age of the fences, the widest possible width of the road is determined by the location of the ancient fences immediately north and south of the road. The boundary lines of the road can be determined by a survey on the basis of those locations.

*Id.* at 132.

¶ 55. Hence, in concluding that the Baums rebutted the four rod presumption, the court of appeals determined that the widest possible width of Sand Branch Road was that of the ancient fences. *See id.* at 132. The ancient fences, in turn, marked the limits of the user. *Id.*; *see also id.* at 128 & n.6 (stating that the *Nicolai* rule—the width of a highway created by user is determined by the limits of the user—still applies when

a landowner rebuts the presumption that an unre-corded highway is four rods).

¶ 56. In summary, *Barrows* and *Threlfall* teach us that evidence of ancient fences within a four rod width is sufficient to rebut the presumption under Wis. Stat. § 82.31(2) that a highway created by user is four rods wide. *See Barrows,* 8 Wis. 2d at 63; *Threlfall,* 190 Wis. 2d at 129, 131. If a landowner rebuts the presump-tion that a highway created by user is four rods wide, then the highway's width is determined by the limits of the user. *See Threlfall,* 190 Wis. 2d at 132; *Nicolai,* 227 Wis. at 89. At the same time, that same evidence of ancient fences may not be sufficient to rebut the presumption under Wis. Stat. § 82.31(1) that a laid out highway is four rods wide. *See Barrows,* 8 Wis. 2d at 69–71.

¶ 57. Turning to the case now before this court, we are not yet concerned with the actual width of Highway B or even whether a presumptive width is rebutted. Unlike the appeal postures of *Barrows* and *Threlfall,* the posture of this case is summary judg-ment. Accordingly, in this case, we must decide only whether the Affeldts have set forth sufficient evidence to raise a genuine issue of material fact concerning the width of Highway B. We conclude that they have.

B. Application of the Summary Judgment Methodology

██

¶ 58. The principles of summary judgment are well-defined. Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

129

material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). Stated conversely, summary judgment should not be granted "unless the facts presented conclusively show that the plaintiff's action has no merit and cannot be maintained." *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶ 14, 281 Wis. 2d 448, 699 N.W.2d 54 (internal quotations omitted).

¶ 59. In determining whether to grant summary judgment, "the court decides whether there is a genuine issue of material fact; the court does not decide the fact." *Oracular Milwaukee*, 323 Wis. 2d 682, ¶ 25. The moving party bears the burden of establishing the absence of a genuine, that is, disputed, issue of material fact. *AccuWeb, Inc. v. Foley & Lardner*, 2008 WI 24, ¶ 21, 308 Wis. 2d 258, 746 N.W.2d 447; *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980). Moreover, we view summary judgment materials in the light most favorable to the non-moving party. *AccuWeb*, 308 Wis. 2d 258, ¶ 21. As we have often stated, "summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy." *Grams*, 97 Wis. 2d at 338; *see also Konneker*, 326 Wis. 2d 268, ¶ 22; *Oracular Milwaukee*, 323 Wis. 2d 682, ¶ 25; *Energy Complexes, Inc. v. Eau Claire Cnty.*, 152 Wis. 2d 453, 462, 449 N.W.2d 35 (1989); *Poynter v. Johnston*, 114 Wis. 2d 439, 446, 338 N.W.2d 484 (1983).

¶ 60. In this case, we conclude that the circuit court improperly granted summary judgment to the County. The Affeldts have set forth sufficient evidence to raise a genuine issue of material fact concerning the width of Highway B.

## 1. Recorded highway that has been laid out

¶ 61. The Affeldts have set forth specific facts showing that there is a genuine issue as to whether Highway B is a recorded highway that has been laid out. Attached to Joyce Affeldt's affidavit was a copy of the Green Lake County Board proceedings from November 21, 1939, which purportedly reveals the adoption of Resolution No. 38, a resolution to add Highway B to the system of town roads maintained by the County. The resolution states the following:

> BE IT RESOLVED by the County Board of Supervisors of Green Lake County duly assembled in regular session begun November 14th, 1939,
>
> THAT the following described road lying wholly in the Towns of Green Lake and Marquette be added to the System of Town Roads maintained by the County:
>
> > Beginning at the center of the East one-half of Section 27 at its junction of State Highway 73 and extending west through Section 27, 28 to its junction to what is known as the "Danze's Tavern Road"—a distance of approximately one mile."

The resolution then provides that it was "[p]assed and adopted this 21st day of November, 1939" and attested to by a named "Chairman" and a named "County Clerk."

¶ 62. The Affeldts do not dispute that the description contained in Resolution No. 38 refers to Highway B. However, as the Affeldts correctly point out, there is a genuine issue of material fact concerning whether Resolution No. 38 constitutes an "order" laying out Highway B for purposes of satisfying Wis. Stat. § 80.01(1) (1939). Indeed, the County has presented no

131

evidence that Resolution No. 38, or a certified copy thereof, was filed in the office of the Green Lake or Marquette town clerk. *See* § 80.01(1) (1939); *Muehrcke,* 43 Wis. 2d at 7 (concluding that even an entry in the town record book and signed by the town clerk fell "far short of the procedural requirements for laying out public highways"); *Wolfinger,* 237 Wis. at 656 (concluding that the town board's order purportedly laying out a road was deficient because it was not filed with the town clerk as required by statute).

¶ 63. Moreover, there is a genuine issue of material fact concerning whether Highway B was laid out by the supervisors of the town of Green Lake or Marquette, such that Wis. Stat. § 80.07 (1939) governed, or whether Highway B was laid out by the board of supervisors of the County, such that Wis. Stat. § 80.41 (1939) governed.[9] Resolution No. 38 was not signed by any town supervisor, *see* Wis. Stat. § 80.07 (1939), and it

[9] The dissent's analysis is based entirely upon an assumption that Resolution No. 38 qualifies as an "order" of the County's board of supervisors laying out Highway B for purposes of satisfying Wis. Stat. § 80.41 (1939). *See* dissent, ¶ 78 ("Green Lake County, through its board of supervisors, attempted to lay out the highway."); dissent, ¶ 79 ("[Resolution No. 38] expresses the intent of the county board of supervisors to locate and lay out CTH B . . . ."); dissent, ¶ 88 ("In the present case, Green Lake County, not a town, laid out CTH B in 1939, adhering to Wis. Stat. § 80.41 (1939)."); dissent, ¶ 89 ("Here, the Green Lake County Board laid out Highway B on its own initiative."). That the dissent is based upon an assumption of facts is itself indicative of why summary judgment is inappropriate in this case. "On summary judgment the court does *not decide the issue of fact; it decides whether there is a genuine issue of fact." Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980); *see also Racine Cnty. v. Oracular Milwaukee, Inc.,* 2010 WI 25, ¶ 25, 323 Wis. 2d 682, 781 N.W.2d 88.

was attested to, but not signed by, the chairman of the county board of supervisors and the county clerk, *see* Wis. Stat. § 80.41 (1939).[10]

---

[10] The dissent acknowledges that "not all of the procedural steps required by the 1939 statutes were precisely followed" in the alleged laying out of Highway B, *see* dissent, ¶ 82, but yet declines to grant the Affeldts their day in court, reasoning that any such defects were cured after the expiration of five years. Dissent, ¶ 91. At no point in these proceedings have the Affeldts or the County raised the issue of whether a curative statute applies in this case. *See State v. Carter*, 2010 WI 77, ¶ 56 n.38, 327 Wis. 2d 1, 785 N.W.2d 516. Nevertheless, we are cognizant of the fact that in 1943, the legislature enacted a curative provision that served to validate an otherwise defective resolution or order after the expiration of five years. Wisconsin Stat. § 80.01(4) (1943) provided, in relevant part:

> Every street, highway and alley . . . attempted or intended to be laid out . . . by the authorities of any county, town, city or village shall be held to have been lawfully so . . . laid out . . . from and after the expiration of 5 years from the date of the deed, instrument, plat, order, resolution or other final proceeding had or taken to effectuate such purpose. No defect, omission or informality in the execution of any plat or deed of dedication or in any proceedings, order or resolution on the part of such authorities for the purposes aforesaid shall affect or invalidate such plat, deed, order or resolution or proceeding, after the expiration of 5 years from the date of the plat, deed, proceeding, order or resolution; provided, the street or alley laid out, or altered by such defective, or informal plat, deed, proceeding, order or resolution, shall be limited in length to the portion actually worked and used thereunder.

However, in light of Wis. Stat. § 80.07 (1943), we question whether Wis. Stat. § 80.01(4) (1943) can cure the seemingly fatal defect of failing to file an order in the office of the town clerk. Wisconsin Stat. § 80.07 (1943) retained the provision that "[i]n case the supervisors fail to file the order . . . within the 10 days aforesaid they shall be deemed to have decided against the application [to lay out a highway]." Deeming the supervisors to have decided against an application to lay out a highway is inherently inconsistent with the requirement in Wis. Stat.

¶ 64. Because there is a genuine issue as to whether Resolution No. 38 constitutes an "order" laying out Highway B, there is likewise a genuine issue as to whether Highway B is four rods wide as provided in Wis. Stat. § 80.08 (1939).

## 2. Highway that has been laid out but not recorded

¶ 65. Assuming Highway B has been laid out but not recorded, the Affeldts have set forth specific facts that, if proven, are sufficient to rebut the presumption under Wis. Stat. § 82.31(1) that Highway B was laid out four rods wide. Even assuming that Resolution No. 38 laid out Highway B, it is possible that Highway B was laid out as narrow as three rods wide. *See* Wis. Stat. § 80.08 (1939). The County has introduced no evidence to show otherwise. To the contrary, in a report offered by the County, Ingram acknowledged not finding any written record of Highway B's width.

¶ 66. The Affeldts, on the other hand, set forth specific facts that, if proven, would demonstrate that Highway B was laid out less than four rods wide.

---

§ 80.01(4) (1943) that the highway be one that the authorities "intended to" lay out. *See Beard v. Lee Enters., Inc.,* 225 Wis. 2d 1, 15, 591 N.W.2d 156 (1999) ("Apparently conflicting provisions of law should be construed so as to harmonize them and thus give effect to the leading idea behind the law.").

In support of its position, the dissent cites *Jacobosky v. Town of Ahnapee,* 244 Wis. 640, 643, 13 N.W.2d 72 (1944), and *Zblewski v. Town of New Hope,* 242 Wis. 451, 455, 8 N.W.2d 365 (1943). Dissent, ¶ 87 n.10. However, neither case supports the proposition that Wis. Stat. § 80.01(4) (1943) can cure the defect of failing to file an order in the office of the town clerk. Indeed, in both cases, the order laying out the road in question was filed with the town clerk. *See Jacobosky,* 244 Wis. at 641, 643; *Zblewski,* 242 Wis. at 453.

Attached to W. Alan Affeldt's affidavit was an aerial photograph purportedly depicting a fence line and several full-grown trees that existed along Highway B as early as the 1940s. Steinkraus' survey map supported W. Alan's averment that the fence line and trees existed within a four rod width of Highway B. Indeed, even Ingram's report recognized that "ancient fences" along the south side of Highway B varied from zero to six feet north of the four rod right-of-way. Viewing these affidavits in the light most favorable to the Affeldts, there is a genuine issue as to whether Highway B was laid out less than four rods wide. That is, even assuming Highway B was laid out in 1939, the Affeldts have raised a reasonable inference that Highway B was laid out at a width corresponding to that of the ancient fences.

### 3. Highway created by user

¶ 67. Finally, assuming Highway B has not been laid out and instead was created by user, the Affeldts have set forth specific facts that, if proven, are sufficient to rebut the presumption under Wis. Stat. § 82.31(2) that Highway B is four rods wide. The Affeldts set forth an abundance of testimonial and photographic evidence tending to show that ancient fences, trees, and a machine shed existed along Highway B within a four rod width. W. Alan, who has lived in the same farmhouse on Highway B since he was born in 1946, averred that the trees and fences have existed in the same location for as long as he can remember. Steinkraus' survey map, aerial photographs, and a photograph of W. Alan as a child supported W. Alan's averment. As previously noted, the County, through Ingram, did not dispute the existence of such ancient fences and instead merely opined that such evidence was too inconsistent to be of value.

135

¶ 68. Assuming it is proven, the evidence of the ancient fences and trees on either side of Highway B is sufficient to rebut the presumption that Highway B is four rods wide. *See Barrows,* 8 Wis. 2d at 63; *Threlfall,* 190 Wis. 2d at 129, 131. Moreover, contrary to the County's contention, that general rule is not defeated simply because the distance between the fence lines may have varied. *See Threlfall,* 190 Wis. 2d at 132.

## V. CONCLUSION

¶ 69. We conclude that the circuit court improperly granted summary judgment to the County. The Affeldts have set forth sufficient evidence to raise a genuine issue of material fact concerning the width of Highway B. Specifically, the Affeldts have set forth specific facts showing that there is a genuine issue as to whether Highway B is a recorded highway that has been laid out. Moreover, assuming Highway B has been laid out but not recorded, the Affeldts have set forth specific facts that, if proven, are sufficient to rebut the presumption that Highway B was laid out four rods wide. Finally, assuming Highway B has not been laid out and instead was created by user, the Affeldts have set forth specific facts that, if proven, are sufficient to rebut the presumption that Highway B is four rods wide.

¶ 70. Because we conclude that the Affeldts have set forth sufficient evidence to rebut the presumption that Highway B is four rods wide, we do not reach the question of whether the presumption's retroactive application to Highway B amounts to an unconstitutional taking of the Affeldts' property.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the circuit court for further proceedings consistent with this opinion.

¶ 71. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). Using a confusing step-by-step analysis, the majority opinion concludes that a genuine issue of material fact exists about whether County Highway B (CTH B) is a recorded and laid out highway with a width of four rods. I conclude, as did the court of appeals, that CTH B in Green Lake County is a recorded, laid out highway and as a matter of law "shall" be four rods wide.[1] Accordingly, I would affirm the decision of the court of appeals and hold that Green Lake County is entitled to summary judgment. For the reasons set forth, I dissent.

¶ 72. Whether CTH B is a recorded, laid out highway centers on 1939 Resolution No. 38 of the County Board of Supervisors of Green Lake County. The resolution undisputedly describes CTH B and resolves that CTH B be added to the system of town roads maintained by the County. Resolution No. 38 was included in the county board proceedings, which stated the resolution was passed and adopted on November 21, 1939, and was attested to by the chairman of the Green Lake County Board of Supervisors and the county clerk.

¶ 73. To determine whether CTH B is a "recorded, laid out" highway, I must first decide what statutes govern the issue.

¶ 74. Under the current statutes, Wis. Stat. § 82.01(8) (2007–08), the definition of "recorded highway"—which relates to highways laid out before January 1, 2005—provides that the order must be re-

---

[1] *Affeldt v. Green Lake County,* 2009AP2315, unpublished slip op., ¶ 14 (Wis. Ct. App. July 28, 2010).

I also agree with the circuit court that "there is merit to the county's position that every 100 foot property owner cannot have a different fence line[;] otherwise the highway system would result in chaos and not enhance management but undermine proper management from both road maintenance and safety for those who use it . . . ."

corded in the office of the clerk of the town or the county in which the highway is situated:

"Recorded highway" means a highway for which the order laying out or altering the highway, or a certified copy of the order, has been recorded in the office of the register of deeds in the county in which the highway is situated or, *for highways that were laid out or altered before January 1, 2005, in the office of the clerk of the town or the county in which the highway is situated* (emphasis added).

¶ 75. Again, according to the current statutes, Wis. Stat. § 82.01(4) (2007–08), the phrase "laid out" is defined as "any formal act or process by which a municipality determines the location of a highway."[2]

¶ 76. CTH B was not laid out or recorded under the current statutes. It was laid out, that is, located, by Green Lake County Board Resolution 38, adopted in 1939.

¶ 77. I therefore look to the 1939 laws to resolve the issues presented in this case.

¶ 78. CTH B is a highway that extends through Green Lake County and two townships, Green Lake and Marquette. Green Lake County, through its board of supervisors, attempted to lay out the highway. The 1939 procedures pertinent for a *county* to lay out and record a highway are set forth in Wis. Stat. § 80.41 (1939). Under that statute, when a *county* acts, as it did in the present case, in contrast with the 1939 statutes governing when a town acts (Wis. Stat. § 80.07 (1939)), the County Board of Supervisors

shall make an *order* laying out, altering, widening or discontinuing such highway or refusing so to do, which

---

[2] The 1939 statutes, the operative statutes when Green Lake County acted, did not define the phrase "laid out."

shall be *signed by the chairman and county clerk* and *filed and recorded in the county clerk's office.* When they shall lay out, alter, widen or discontinue a highway they shall incorporate in the order a description thereof and *may cause, when necessary,* an accurate *survey* to be made for that purpose, and shall also *cause a copy of such order to be filed in the office of the town clerk of each town* in which any part of the highway laid out, altered, widened, or discontinued lies within ten days after the making of such order.

Wis. Stat. § 80.41 (1939) (emphasis added).[3]

¶ 79. Resolution No. 38 was a resolution of the county board rather than an order. It expresses the intent of the county board of supervisors to locate and lay out CTH B and incorporate CTH B into the system of town roads maintained by the County. The resolution, rather than an order, was attested to by the chairman of the County Board of Supervisors and the county clerk. The applicable procedures for a county locating a highway do not call for the signatures of the town representatives or a committee of the County Board. Majority op., ¶ 62. Resolution No. 38 was filed in the county clerk's proceedings.

---

[3] The majority seems to conclude that there is a genuine issue of material fact as to whether CTH B was laid out by the supervisors of either the Town of Green Lake or the Town of Marquette, or whether CTH B was laid out by the board of supervisors of Green Lake County. Majority op., ¶ 63. The majority points to no evidence in the record that supports a dispute on this issue. I rely on Resolution No. 38, in which the board of supervisors of Green Lake County explicitly located and expressed its intent to add CTH B to the system of town roads maintained by the County. Whether one of the towns subsequently also attempted to lay out CTH B does not create a genuine issue of material fact as to whether the County laid out CTH B in Resolution No. 38 in 1939.

¶ 80. There is, however, nothing in the record to show that a copy of Resolution 38 was filed in the office of the town clerk of each town in which any part of the highway lies, as the 1939 statute requires.[4]

¶ 81. No survey appears in the record, but none is statutorily required. It is undisputed that CTH B has been publicly traveled and worked over the same track since the 1800s, and so it is reasonable to conclude that no survey was necessary to describe the highway in the resolution.

¶ 82. It is clear and undisputed that not all of the procedural steps required by the 1939 statutes were precisely followed by the Green Lake County Board of Supervisors in laying out CTH B. The majority opinion suggests that the failure to file a copy of Resolution 38 in the offices of the town clerks is fatal to Green Lake County's attempt to lay out CTH B.[5] I disagree.

---

[4] Plaintiff Joyce Affeldt averred that after diligent review of the records of Green Lake County, the Town of Green Lake, the Town of Marquette, and the Green Lake Historical Society, she discovered three documents between 1930 and 1940 that she believed referenced CTH B. One of these records was Resolution 38, and another was minutes of the Town of Green Lake board from 1930, in which a motion for a road (purportedly a portion of CTH B) was read and was voted down. The third exhibit is the minutes of the annual town meeting of the Town of Marquette from 1940, in which a motion was carried to "use some of the highway fund to grade and gravel the highway . . . and file petition with the county to the effect that said highway be placed under county highway supervision . . . ." Joyce Affeldt averred that the description of the highway in that motion coincides with CTH B.

[5] The majority cites to *Muehrcke v. Behrens,* 43 Wis. 2d 1, 169 N.W.2d 86 (1969) and *Town of Buchanan v. Wolfinger,* 237 Wis. 652, 298 N.W. 176 (1941), to support its conclusion that failing to file a certified copy of Resolution No. 38 with the clerks of the Town of Green Lake and Town of Marquette was

¶ 83. Procedural failures in laying out or recording a highway do not necessarily defeat the intended goal of the County to lay out the highway. The legislature has adopted curative statutes. The legislature has declared that any defects, irregularities, omissions, or informalities are cured after the expiration of five years and that no defects, irregularities, omissions, or informalities shall affect or invalidate the order or resolution after the expiration of five years from the date of an order or resolution. Indeed, a curative statute, in one form or another, has been continuously a part of the statutory scheme for governmental actions on highways since at least 1869.[6]

¶ 84. A curative statute, Wis. Stat. § 80.63 (1939), was in effect in 1939 when Green Lake County resolved to include CTH B within the system of town roads maintained by the county.[7] A similar curative statute, Wis. Stat. § 80.01(4) (1943), was in effect at the expira-

---

a fatal procedural misstep by the County in laying out CTH B. Both of those cases, however, presented distinct legal questions and addressed town board procedures, and neither case acknowledged the curative statutes, much less addressed the applicability of the curative statutes to resolve the unique questions presented.

[6] *Jacobosky v. Town of Ahnapee*, 244 Wis. 640, 13 N.W.2d 72 (1944).

[7] Wisconsin Stat. § 80.63 (1939)stated in part:

80.63 Highways; streets and alleys; curative provisions. (1) Any and every street, highway and alley, pier and slip, heretofore or hereafter dedicated or attempted and intended to be dedicated in any plat by any person, or laid out, altered, changed, vacated or discontinued, or attempted or intended to be laid out, altered, changed, vacated or discontinued by the authorities of any county, town, city or village in this state, shall be taken and held to have been lawfully so dedicated, laid out, altered, changed, vacated or discontinued, as the case may be, from and after the expiration of five years from the date of the deed, instrument, plat, order, resolution or other final proceeding had or taken to effectuate such purpose.

tion of five years from Green Lake County's laying out and recording CTH B.[8] And a similar curative statute is presently in effect.[9] The Affeldts presented a copy of the 1939 curative statute in their briefs, and the parties were questioned about the effect of the curative statutes at oral argument.

(2) No defect, irregularity, omission or informality in the execution of any plat or deed of dedication or in any proceedings, order or resolution on the part of the authorities of any county, town, city or village, whether formal or jurisdictional, for the purposes aforesaid, heretofore made or taken or hereafter to be made or taken, shall affect or invalidate such plat, deed, proceeding, order or resolution; provided, however, that the street or alley laid out, altered or changed by such defective, irregular or informal plat, deed, proceeding, order or resolution, shall be limited in length to the portion actually worked and used thereunder.

[8] Wisconsin Stat. § 80.01(4) (1943) provides as follows:

Highways, Streets and Alleys, Piers, Plats, Curative Provisions. Every street, highway and alley, pier and slip, dedicated or attempted and intended to be dedicated in any plat or laid out, altered, vacated or discontinued, or attempted or intended to be laid out, altered, vacated or discontinued by the authorities of any county, town, city or village shall be held to have been lawfully so dedicated, laid out, altered, vacated or discontinued from and after the expiration of 5 years from the date of the deed, instrument, plat, order, resolution, or other final proceeding had or taken to effectuate such purpose. No defect, omission or informality in the execution of any plat or deed of dedication or in any proceedings, order or resolution on the part of such authorities for the purposes aforesaid shall affect or invalidate such plat, deed, order or resolution or proceeding, after the expiration of 5 years from the date of the plat, deed, proceeding, order or resolution; provided, the street or alley laid out, or altered by such defective, or informal plat, deed, proceeding, order or resolution, shall be limited in length to the portion actually worked and used thereunder.

[9] Wisconsin Stat. § 66.1033 (2007–08) provides:

(1) In this section:

(a) "Political subdivision" means a city, village, town, or county.

(b) "Public way" means a highway, street, slip, pier, or alley.

¶ 85. The curative statutes clearly state that no defect, irregularity, omission, or informality in any proceedings, order or resolution on the part of a governmental entity for the purposes of laying out a highway shall affect or invalidate such resolution, order or proceeding after the expiration of 5 years. The majority concludes that the failure of the board of supervisors of Green Lake County in 1939 to cause a copy of the order to be filed with the clerks of the Town of Green Lake and the Town of Marquette is a defect or omission that is an exception to this explicit statement of policy by the legislature.

¶ 86. The majority opinion dismisses the curative statutes in a footnote. Majority op., ¶ 63 n.10. The majority "questions" whether the 1943 curative statute can apply because Wis. Stat. § 80.07 (1943) provides that "[i]n case the supervisors fail to file the order . . . they shall be deemed to have decided against [the application to lay out a highway]." *Id.*

(2) For proceedings taken, or for plats, deeds, orders, or resolutions executed before January 1, 2005, notwithstanding s. 840.11, no defect, omission or informality in the proceedings of, or execution of a plat, deed of dedication, order, or resolution by, a political subdivision shall affect or invalidate the proceedings, plat, deed, order, or resolution after 5 years from the date of the proceeding, plat, deed, order, or resolution. The public way dedicated, laid out, or altered by a defective or informal proceeding, plat, deed, order, or resolution shall be limited in length to the portion actually worked and used.

In explaining the changes to the curative statute in the recodification of the town highway statutes that occurred in 2003, the Wisconsin Legislative Council stated: "after the effective date of the act, the new s. 66.1029 [now 66.1033], would cure all defects except a failure to comply with s. 840.11." *Wisconsin Legislative Council Report to the Legislature: Special Committee on Recodification of Town Highway Statutes*, RL 2003–13, at 7 (Dec. 4, 2003). Section 840.11 is not applicable here.

¶ 87. The majority's footnote is in error. The "supervisors" referred to in Wis. Stat. § 80.07 (1943) are town supervisors who are laying out a highway. Furthermore, the court has declared that "[t]he purpose of [§ 80.07] is to compel the supervisors of the town to act upon petitions for the laying out of a highway and to avoid a situation where by complete inaction an appeal might be defeated[,] . . . not [to] prevent the operation of [the curative statute]."[10]

¶ 88. In the present case, Green Lake County, not a town, laid out CTH B in 1939, adhering to Wis. Stat. § 80.41 (1939). Thus, Wis. Stat. § 80.07 (1943), upon which the majority relies to find the curative statutes ineffective in the present case, is not applicable here.

¶ 89. The language in Wis. Stat. § 80.07 (1943) deeming the authorities "to have decided against such application" applies when resident freeholders submit an application to the town under § 80.02 and petition the town supervisors to lay out a highway. Here, the Green Lake County Board laid out Highway B on its own initiative. Accordingly, the curative statute is applicable in the present case.

¶ 90. A curative statute fosters stability in the law and repose of title. The legislature has determined that a five-year period provides the appropriate balance for allowing aggrieved property owners the ability to challenge defects and omissions in governmental action in laying out a highway. The present case exemplifies the reason the legislature has adopted five-year curative statutes to repair procedural missteps regarding plats, deeds, orders, resolutions, or proceedings. Litigation,

---

[10] *Zblewski v. Town of New Hope*, 242 Wis. 451, 455, 8 N.W.2d 365 (1943); *Jacobosky v. Town of Ahnapee*, 244 Wis. 640, 643, 13 N.W.2d 72 (1944) (citing *Zblewski*).

such as the present case, that arises 70 years after the government acts in laying out a highway disturbs the safety of title and the expectations of property owners and government. Such disturbances are contrary to the public policy adopted by the legislature.

¶ 91. Accordingly, I conclude that although there were defects, irregularities, omissions, or informalities in Resolution 38, any such defects, irregularities, omissions, or informalities were cured upon the expiration of the statutorily prescribed five-year period. CTH B is, in my opinion, a recorded and laid out road pursuant to Resolution 38, adopted by Green Lake County in 1939. Any defects, irregularities, omissions, or informalities in Resolution 38 have been cured.

¶ 92. Having determined that CTH B is a recorded, laid out highway pursuant to the County Board of Supervisors of Green Lake County's 1939 Resolution No. 38, I still must address the central question of this case: What is the width of the highway?

¶ 93. Wisconsin Stat. § 80.08 (1939) provides the answer: "Except as otherwise expressly provided by section 80.13, highways shall be laid out at least three rods wide, and when no width is specified in the order the highway shall be four rods wide."[11] No width for CTH B was specified in Resolution 38. Thus, by statute, CTH B is four rods wide. Accordingly, summary judgment in favor of Green Lake County was appropriate.

¶ 94. For the foregoing reasons, I dissent.

¶ 95. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[11] *See also* Wis. Stat. § 80.08 (1943).