STATE of Wisconsin, Plaintiff-Respondent,†

v.

Clayton W. WILLIAMS, Defendant-Appellant.

Court of Appeals

*No. 2011AP2868–CR. Submitted on briefs August 7, 2012.
—Decided April 11, 2013.*

2013 WI App 74

(Also reported in 833 N.W.2d 846.)

† Petition for Review granted November 21, 2013.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Grunder*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Maura FJ Whelan*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Sherman, Blanchard and Kloppenburg, JJ.

¶ 1. SHERMAN, J. Clayton W. Williams appeals from a judgment of conviction for operating a motor vehicle while under the influence of an intoxicant (OWI), seventh offense, contrary to Wis. Stat. § 346.65(2)(g)2. (2011–12).[1] Williams argues that the circuit court erred in sentencing him to imprisonment because the court was operating under the mistaken belief that § 346.65(2)(am)6. mandates that a defendant be sentenced to a minimum of three years' initial confinement. We reverse.

## BACKGROUND

¶ 2. Williams was charged with, and pled guilty to, seventh offense OWI. Pursuant to the plea agreement, remaining charges against Williams were either dismissed, or dismissed and read-in, at sentencing. The State agreed that it would recommend that Williams be sentenced to six years' imprisonment, including three years of initial confinement, and Williams was free to argue for a lesser sentence.

¶ 3. Prior to sentencing, Williams argued to the court that Wis. Stat. § 346.65(2)(am)6., the current sentencing statute for OWI offenses, does not on its face require a mandatory prison sentence for seventh offense OWIs. Williams reasserted this argument at sen-

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

tencing. The circuit court rejected Williams' argument, determining that it was required to impose at minimum a six-year sentence, including three years of initial confinement. The court then sentenced Williams to a prison term of six years' imprisonment, including three years' initial confinement and three years' extended supervision. Williams appeals.

## DISCUSSION

¶ 4. Williams contends that the circuit court erred in sentencing him because the court mistakenly believed that WIS. STAT. § 346.65(2)(am)6. imposes a mandatory minimum sentence of three years' initial confinement for a seventh offense OWI.

¶ 5. The interpretation and application of a statute are questions of law that we review de novo. *Affeldt v. Green Lake Cnty.*, 2011 WI 56, ¶ 32, 335 Wis. 2d 104, 803 N.W.2d 56. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court of Dane Cnty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 6. Statutory construction begins with the language of the statute. *Id.*, ¶ 45. If the meaning of the statutory language is plain, our inquiry ends. *Id.* We must presume that the legislature " 'says in a statute what it means and means in a statute what it says,' " and we give the language its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special meaning. *Id.*, ¶¶ 39, 45 (quoted source omitted). " 'If this

process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.*, ¶ 46 (quoted source omitted). If, however, the analysis does not yield one plain meaning, but instead reveals that the statutory language reasonably gives rise to two or more reasonable interpretations, the language is ambiguous. *Id.*, ¶ 47. In that event, we may look to extrinsic sources of legislative intent, such as legislative histories, to ascertain the meaning of the statute. *Id.*, ¶ 48.

¶ 7. Wisconsin Stat. § 346.65(2)(am)6. provides:

> Except as provided in par. (f), is guilty of a Class G felony if the number of convictions under ss. 940.09(1) and 940.25 in the person's lifetime, plus the total number of suspensions, revocations, and other convictions . . . equals 7, 8, or 9 . . . . *The confinement portion of a bifurcated sentence imposed on the person under s. 973.01 shall be not less than 3 years.* (Emphasis added.)

The emphasized language was added to § 346.65(2)(am)6. by 2009 Wis. Act 100, § 43.

¶ 8. Both Williams and the State agree that Wis. Stat. § 346.65(2)(am)6. is unambiguous; however, they disagree as to how the statute should be interpreted.[2] The State argues that the plain language of § 346.65(2)(am)6. "clearly assumes that a bifurcated sentence will be imposed" and that the addition of the

---

[2] The State alternately asserts that if this court determines that Wis. Stat. § 346.65(2)(am)6. is ambiguous, the legislative history of the amendment to subdivision 6. establishes that the Legislature intended the imposition of a minimum sentence of three years' imprisonment to be mandatory as part of a bifurcated sentence. We do not reach legislative history because, as set forth in this opinion, we conclude that the statute is unambiguous in that the meaning of its plain language is clear.

language "[t]he confinement portion of a bifurcated sentence imposed on the person under s. 973.01 shall be not less than 3 years" "implies" that the imposition of a bifurcated sentence is mandatory for a seventh offense OWI. We conclude that the State's reliance on assumption and implication has no basis in the plain language used by the legislature in the statute.

¶ 9. WISCONSIN STAT. § 346.65(2)(am)6. provides that "[t]he confinement portion of a bifurcated sentence imposed on [a defendant] under [WIS. STAT. §] 973.01 shall be not less than 3 years." Although the subdivision references the imposition of a bifurcated sentence, and specifies the minimum term of incarceration in the event that a bifurcated sentence is imposed, nothing in the plain language of the subdivision *mandates* or *requires* that a bifurcated sentence be imposed.

¶ 10. Statutory language must be interpreted in the context in which it is used, as part of a whole in relation to the language of surrounding or closely related statutes. *Kalal*, 271 Wis. 2d 633, ¶ 46. When we look at closely related statutes, in particular WIS. STAT. § 973.01, which explains the bifurcated sentence structure, and WIS. STAT. § 939.50, which classifies felonies and establishes the maximum penalties, we see that those statutes do not contain language establishing a mandatory minimum sentence for a seventh offense OWI, a class G felony. *See* WIS. STAT. § 346.65(2)(am)6. (providing that a seventh through ninth offense OWI is a class G felony). Section 939.50(3)(g) establishes a maximum penalty for class G felonies and § 973.01(2)(b)7. establishes a maximum period of confinement for class G felonies under the bifurcated sentencing structure. *See* § 939.50(3)(g) (providing that Class G felonies are punishable by up to ten years' imprisonment and a $25,000 fine);

317

§ 973.01(2)(b)7. (providing that for a class G felony, the term of confinement may not exceed five years).

¶ 11. When we look at the surrounding statutes in WIS. STAT. § 346.65(2)(am), *Kalal*, 271 Wis. 2d 633, ¶ 46, we see that those statutes contain the mandatory language that is missing in § 346.65(2)(am)6. Section 346.65(2)(am) sets forth the various penalties for violating WIS. STAT. § 346.63(1). In subdivisions 2. through 5., which set forth the penalties for second offense OWIs through sixth offense OWIs, the legislature included language establishing mandatory minimum sentencing requirements. Subdivision 2. provides that a defendant guilty of a second offense OWI "shall be fined not less than $350." Section 346.65(2)(am)2. Subdivision 3. provides that a defendant guilty of a third offense OWI "shall be fined not less than $600 . . . and imprisoned for not less than 45 days." Section 346.65(2)(am)3. Subdivision 4. and subdivision 4m. provide that a defendant guilty of a fourth offense OWI "shall be fined not less than $600 . . . and imprisoned for not less than 60 days" or "shall be fined not less than $600 and imprisoned for not less than 6 months," depending on when the prior convictions occurred. Sections 346.65(2)(am)4. and 4m. And subdivision 5. provides that a defendant guilty of a fifth or sixth offense OWI "shall be fined not less than $600 and imprisoned for not less than 6 months." Section 346.65(2)(am)5. No such similar mandatory language is included in subdivision 6. for seventh and subsequent offenses. *See Responsible Use of Rural & Agric. Land v. PSC*, 2000 WI 129, ¶ 39, 239 Wis. 2d 660, 619 N.W.2d 888 (When the legislature uses words in one subsection but not in another, " 'we must conclude that the legislature specifically intended a different meaning.' ") (quoted source omitted).

318

¶ 12. "If we conclude the statutory language is plain, then we apply its plain meaning." *JP Morgan Chase Bank, NA v. Green*, 2008 WI App 78, ¶ 24, 311 Wis. 2d 715, 753 N.W.2d 536. Giving the language of Wis. Stat. § 346.65(2)(am)6. its plain and ordinary meaning, we conclude that in the event that a bifurcated sentence is imposed on a defendant who is found guilty of a seventh offense OWI, the circuit court must impose a minimum period of incarceration of three years. However, nothing in the plain language *mandates* that such a bifurcated sentence be imposed as a minimum sentence.

¶ 13. Not every assertion of an alternative interpretation is evidence of ambiguity. *Kalal*, 271 Wis. 2d 633, ¶ 47 ("It is not enough that there is a disagreement about the statutory meaning . . . ."). For ambiguity to exist, both alternative interpretations must be reasonable. *Id.* ("the test for ambiguity examines the language of the statute 'to determine whether well-informed persons *should have* become confused' ") (quoted source omitted).

¶ 14. We do not conclude the State's assertion that a mandatory minimum sentence is implied in Wis. Stat. § 346.65(2)(am)6., and thus that we should approve sentencing a defendant to a minimum period of imprisonment only on what is implied in a statute rather than what is written, to be a reasonable alternative interpretation. While such an implication may seem reasonable as a matter of policy, as suggested by the dissent ¶ 25, it contravenes the plain meaning of the language that the legislature used in the statute. We therefore conclude that there is no ambiguity.

¶ 15. We also do not conclude that the language of the statutory scheme so rigidly establishes a step-by-

step increase in penalties, as suggested by the dissent, that the mandatory minimum is a reasonable alternative. In Wis. Stat. § 346.65(2)(bm), (cm) and (dm), the legislature allows for alternative sentences to those in the supposed step-by-step scheme. The sentencing scheme is complex and not straightforward. On this point, the dissent begins to look like a search for ambiguity. *See Kalal*, 271 Wis. 2d 633, ¶ 47 ("Statutory interpretation involves the ascertainment of meaning, not a search for ambiguity.").

¶ 16. In so concluding, we are cognizant that this interpretation may appear unusual in light of the fact that lesser OWI offenses are subject to mandatory minimum sentences. Contrary to the suggestion in the dissent ¶ 27, it is the legislature's plain language, not our approach to interpreting it, that creates this apparent unusual sentencing scheme. In interpreting statutes, we avoid interpretations that lead to absurd results. However, it is not absurd to consider that the legislature had public policy reasons for differentiating between seventh and subsequent offenses, and third, fourth, fifth, and sixth offenses.[3] It is the legislature that settles and declares the public policy of this State and we do not place ourselves above the Legislature in making such judgments, nor do we "sit in judgment of its wisdom." *See Marlowe v. IDS Prop. Cas. Ins. Co.*, 2013 WI 29, ¶ 37 n.17, 346 Wis. 2d 450, 828 N.W.2d

---

[3] Among those possible public policy considerations might be a desire to reduce the fiscal effect of the overall bill; a concern that a severe, inflexible penalty could lead to reluctance to enforce the provision, or to a serious increase in litigation and collateral attack; or, a desire to encourage alternative sentences similar to the programs referred to in Wis. Stat. § 346.65(2)(bm), (cm), (dm), and (cr).

812. Instead, we encourage the Legislature to consider this outcome and determine if legislation is necessary as a result. Because the circuit court in this case sentenced Williams under the mistaken belief that he was subject to a mandatory minimum sentence, we reverse the judgment of conviction and remand for resentencing.

## CONCLUSION

¶ 17. For the reasons discussed above, we reverse.
*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 18. BLANCHARD, J. (*dissenting*). I agree with the majority that the issue in this case is whether the circuit court erred in sentencing Williams under the mistaken belief that Wis. Stat. § 346.65(2)(am)6. (2011–12)[1] requires the court to impose a mandatory minimum sentence of three years of confinement. *See* Majority, ¶¶ 1, 4. I also agree with the majority that the State's primary argument is incorrect, namely, that, by its plain meaning, the statute requires a mandatory minimum sentence in all seventh and subsequent OWI offense cases. *See id.*, ¶ 8.

¶ 19. However, I disagree with the majority's conclusion that, by its plain meaning, the statute requires a mandatory minimum sentence only when a court decides to impose a prison sentence. Instead, I agree with the circuit court, and the State's alternative argument, that the language of Wis. Stat. § 346.65(2)(am)6. may reasonably be interpreted in two ways, rendering it ambiguous. Having reached that conclusion, I proceed

---

[1] All references to the Wisconsin Statutes are to the 20011–12 version unless otherwise noted.

to the legislative history, which demonstrates that the legislature intended to apply the mandatory minimum sentence to all seventh and subsequent OWI offense cases. Accordingly, I respectfully dissent.

### *Wis. Stat. § 346.65(2)(am)6. is Ambiguous*

¶ 20. The majority concludes that "nothing in the plain language of the [pertinent portion of the statute] *mandates* or *requires* that a bifurcated sentence be imposed." *See* Majority, ¶ 9; *see also id.*, ¶ 12 ("nothing in the plain language *mandates* that such a bifurcated sentence be imposed as a minimum sentence"). However, it could just as easily be said that nothing in the language of the statute plainly shows that a bifurcated sentence is *not* mandated. Therein lies the problem. Contrary to the majority's conclusion, "what is written" in the statute is not clear. *See id.*, ¶ 14.

¶ 21. In concluding that the statutory language is plain, the majority apparently rejects the State's interpretation of the statute as unreasonable, and thereby avoids reaching the State's alternative argument that the statute is ambiguous. However, the majority's reasons for rejecting the State's interpretation as unreasonable are not satisfying. In my view, the observations and analysis provided by the majority make a better case for ambiguity than for a plain meaning.

¶ 22. Of course, a statute is not necessarily ambiguous merely because competing "plain meaning" interpretations of it are argued to a court. It is routine for a court to conclude as a matter of law that one offered "plain meaning" interpretation is correct and that others are incorrect. *See Bruno v. Milwaukee Cnty.*, 2003 WI 28, ¶ 21, 260 Wis. 2d 633, 660 N.W.2d 656 (a court presented with competing " 'plain meaning' inter-

pretations by lawyers or judges" may not "assume ambiguity"). At the same time, it is hardly extraordinary for a court to conclude that a statute is ambiguous even when one or both parties argue otherwise. *See, e.g., Preston v. Meriter Hosp. Inc.*, 2005 WI 122, ¶¶ 19–21, 284 Wis. 2d 264, 700 N.W.2d 158. Contrary to what the majority suggests, this dissent does not "search" for ambiguity where the meaning of the statute is plain. *See* Majority, ¶ 15. Rather, this dissent acknowledges ambiguity that exists, consistent with the circuit court's decision and the State's alternative argument. "[W]hether or not a statute is ambiguous is a question of law for the court. The litigants cannot limit the legal responsibility of the court to make that determination." *State ex rel. Girouard v. Circuit Court for Jackson Cnty.*, 155 Wis. 2d 148, 155, 454 N.W.2d 792 (1990).

¶ 23. There appear to be a number of reasons for finding ambiguity in WIS. STAT. § 346.65(2)(am)6., but I am especially persuaded that there is ambiguity by the following.

¶ 24. On the one hand, as the majority recognizes, Williams' interpretation of the statutory text accounts for the legislature's use of terms in WIS. STAT. § 346.65(2)(am)6. that are markedly different from those the legislature has used to impose mandatory minimums in closely related provisions of the same statute. *See* Majority, ¶ 11 (citing § 346.65(2)(am)1.-5.). Moreover, the terms the legislature used in § 346.65(2)(am)6. seem different from those one might generally expect to see when the legislature intends to impose a mandatory minimum sentence. Thus, one reasonable interpretation of the statutory text is that followed by the majority and Williams, namely, that it prescribes something other than a mandatory minimum term of imprisonment.

¶ 25. On the other hand, there is a reasonable, statutory text-based explanation for why the legislature might have chosen different terms to require a mandatory minimum in Wis. Stat. § 346.65(2)(am)1.-5. than in § 346.65(2)(am)6. The mandatory minimums that are clearly prescribed by the language of § 346.65(2)(am)1.-5. are not bifurcated prison terms, whereas the mandatory minimum that is at least arguably prescribed by the language of § 346.65(2)(am)6. is. Thus, the State's interpretation need not run afoul of the rule that the legislature intends a different meaning when it uses different words in the same statutory section. *Cf.* Majority, ¶ 11 (citing *Responsible Use of Rural & Agric. Land v. PSC*, 2000 WI 129, ¶ 39, 239 Wis. 2d 660, 619 N.W.2d 888). Here, one reasonable interpretation is that the legislature, in using different words, intended different meanings: mandatory minimums that are not bifurcated prison terms in § 346.65(2)(am)1.-5., and a mandatory minimum that is a bifurcated prison term in § 346.65(2)(am)6.[2]

¶ 26. In addition, the State's interpretation of the statutory text, unlike the majority's and Williams' interpretation, accounts for what is a marked change from

---

[2] Apart from the rule that the legislature intends a different meaning when it uses different words in the same statutory section, the primary basis for the majority's interpretation of Wis. Stat. § 346.65(2)(am)6. seems to be its conclusion that there is nothing in "related" statutes that establishes a mandatory minimum for a seventh offense OWI. *See* Majority, ¶ 10. Missing from the majority's analysis, however, is any reason to think that the legislature would have established mandatory minimums for particular OWI offenses in the "related" statutes that the majority cites, Wis. Stat. §§ 973.01 and 939.50. As the majority essentially acknowledges, those statutes are limited to explaining the bifurcated sentencing structure (§ 973.01), or to classifying felonies and indicating maximum penalties (§ 939.50). *See* Majority, ¶ 10.

the previous version of Wis. Stat. § 346.65(2)(am).[3] The previous version of the statute plainly and unambiguously imposed mandatory minimum penalties for second through sixth offenses, including a minimum of six months of imprisonment for a fifth or sixth offense; the previous version plainly and unambiguously did *not* impose mandatory minimum penalties for seventh and subsequent offenses. *See* Wis. Stat. § 346.65(2)(am)2.-7. (2007–08). A comparison of the previous and current versions of the statute strongly suggests that the legislature intended to change the statute to impose what would at least facially appear to be a more logically graduated penalty scheme that requires a mandatory minimum prison term for seventh and subsequent offenses. Thus, it seems reasonable to interpret the statutory text, as the State does, to impose a mandatory minimum prison term for seventh and subsequent offenses.

¶ 27. The majority attempts to downplay the logical implications of a decision to use a graduated penalty scheme, stating that "[i]n Wis. Stat. § 346.65(2)(bm), (cm) and (dm), the legislature allows for alternative sentences to those in the supposed step-by-step scheme." *See* Majority, ¶ 15. However, the provisions in § 346.65(2)(bm), (cm), and (dm) relate to the comparative minimums for offenders with four or fewer offenses. Those provisions are not persuasive textual evidence that the legislature intended to permit a non-custody sentence for offenders with a seventh or subsequent offense. As the majority acknowledges, this sentencing

---

[3] Courts may consult prior versions of a statute in deciding whether statutory language is plain or ambiguous. *See Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581.

scheme is "complex and not straightforward." *See* Majority, ¶ 15. So much so, I conclude, that it is ambiguous.

¶ 28. It might be argued that Williams' interpretation of the statute produces absurd results because, under that interpretation, there is a mandatory minimum sentence for second through sixth offenses but not for seventh and subsequent offenses. That is, a rising stair-step of incremental mandatory sentences for lower numbered OWI offenses stops with a high numbered OWI offense. However, as indicated above, this same result was plainly and unambiguously produced by the prior statutory text. Williams also argues that such a result is not absurd because the legislature could have reasonably assumed that sentencing courts would generally impose imprisonment in a seventh or greater OWI offense, making a mandatory minimum term of imprisonment unnecessary to adequately protect the public.

¶ 29. Ambiguity is also at least suggested by a puzzling feature of the "plain meaning" approach of the majority, which creates a highly unusual way of limiting sentencing discretion for seventh and subsequent offenses. This feature is that, in the majority's interpretation of the law, the sentencing court need not impose a prison term but, if it does, then the term must include at least three years of confinement (four years for tenth and subsequent offenses). Thus, the court could impose straight probation without even conditional jail time, but it could not impose a prison sentence with less than the three (or four) years of confinement. This feature was not present in the prior statutory language. The majority provides no explanation for this odd feature.

¶ 30. For at least these reasons, I am persuaded that the circuit court correctly concluded that Wis. Stat. § 346.65(2)(am)6. is ambiguous. I therefore turn to the statute's legislative history.

## *Legislative History Resolves the Ambiguity*

¶ 31. Based on the following, I agree with the circuit court that the legislative history shows that the State's interpretation of the statute is correct, a topic the majority does not reach. In other words, the legislative history shows that the legislature intended to require a mandatory minimum sentence of three years of confinement for a seventh OWI offense.

¶ 32. As the State explains in its briefing, the pertinent statutory language originated in the October 6, 2009 Senate Substitute Amendment 1 to 2009 S.B. 66. As the State also explains, Senate Substitute Amendment 1 contained a Legislative Reference Bureau analysis of its provisions. The Legislative Reference Bureau's analysis included this statement: "The substitute amendment requires a person who commits a seventh, eighth, or ninth OWI-related offense *to serve a minimum period of confinement [of]*[4] *three years in prison under a bifurcated sentence* . . . ." (Emphasis added.)

¶ 33. As the State further explains, the pertinent statutory language was carried over into the November 3, 2009 Senate Substitute Amendment 2 to 2009 S.B.

---

[4] This portion of the Legislative Reference Bureau's analysis actually states "or" instead of "of," but it is apparent from the context that "or" must have been a typographical error. In particular, the typo is apparent when the above excerpt is read in context with the clause that follows it. The analysis states more fully as follows:

> The substitute amendment requires a person who commits a seventh, eighth, or ninth OWI-related offense to serve a minimum period of confinement *or* three years in prison under a bifurcated sentence and requires a person who commits a tenth or subsequent OWI-related offense to serve a minimum period of confinement *of* four years in prison under a bifurcated sentence.

(Emphasis added.)

66. The Legislative Reference Bureau's analysis included the same statement about that language. Then, in December 2009, the legislature enacted the final version of the bill, 2009 Wis. Act 100, codified in part in Wis. Stat. § 346.65(2)(am)6., including the pertinent language in Senate Substitute Amendment 2.

¶ 34. The State additionally points to a Wisconsin Legislative Council Act Memo, prepared shortly after the passage of 2009 Wis. Act 100. This Act Memo states at page 1 that the "[m]ajor changes" in Act 100 include "[e]stablishing *minimum terms of imprisonment* for 4th offense felony and *5th and subsequent OWI-related offenses.*" (Emphasis added.) A chart beginning on page 2 of the Act Memo refers to the "Minimum confinement period for multiple OWI offenders" and lists the minimum confinement period as follows: "For 7th, 8th, and 9th offenses: 3 years."

¶ 35. The State also relies on a copy of the April 2010 "Legislative Briefs," a publication of the Legislative Reference Bureau that summarizes the effects of 2009 Wis. Act 100. This edition of "Legislative Briefs" states at page 2 that Act 100 "increases the minimum period of confinement . . . to a minimum of three years for seventh, eighth, and ninth offenses."

¶ 36. In addition, the drafting file contains a report on Senate Substitute Amendment 1 by the legislature's Joint Review Committee on Criminal Penalties. This report, like the other legislative history the State has identified, supports the State's interpretation of the statute. In particular, the report attaches an October 2, 2009 Legislative Fiscal Bureau memorandum stating that the bill under consideration would "increase the mandatory minimum sentences for fourth, seventh, eighth, ninth, and tenth OWI offenses." The report also attaches another Legislative Fiscal

Bureau memorandum, dated October 6, 2009, that provides a chart similar to the one in the Legislative Council Act Memo.

¶ 37. One section of the October 2, 2009 Legislative Fiscal Bureau memorandum appears to reflect the ambiguous language in the statute, stating that "[t]he engrossed bill would specify that the confinement portion of a bifurcated sentence must be not less than three years for a person convicted of a seventh, eighth, or ninth OWI offense . . . ."[5] In context, however, this language seems intended to refer to a mandatory minimum sentence of three years of confinement. This is because the language appears under a heading that states, "*Minimum period of confinement* for OWI offenders with multiple prior offenses," and within a paragraph that acknowledges that "[t]here is currently no mandatory minimum period of confinement specified for these offenses." (Emphasis added.)

¶ 38. Finally, while not a critical step in the analysis, I simply note that I find no suggestion in any of the legislative history that the legislature intended to create what would be the highly unusual feature, referenced above in discussing ambiguity, of giving the court discretion to impose no prison term at all, nor even confinement time in jail, but at the same time requiring that any prison term imposed include a substantial term of confinement.

¶ 39. This legislative history persuades me that the legislature intended Wis. Stat. § 346.65(2)(am)6. to impose a mandatory minimum sentence. The history includes multiple, consistent statements referring, with-

---

[5] An "engrossed" bill is a version of the bill "incorporating all adopted amendments and all approved technical corrections in the house of origin." *See* Wisconsin State Senate and Assembly Joint Rule 99(25).

329

out qualification, to a mandatory minimum sentence. More specifically, it is evident from this history that the phrase "[t]he confinement portion of a bifurcated sentence imposed . . . shall be not less than 3 years" in § 346.65(2)(am)6. is intended to describe a mandatory minimum sentence consisting of a bifurcated prison sentence that includes no less than three years of confinement.

¶ 40. Under current law, it is for the legislature, not the courts, to weigh the relative social benefits and burdens of requiring courts to impose sentences of a given length for a given offense. Some no doubt believe that application of the mandatory minimum at issue here to all defendants would result in some, if not many, unnecessarily harsh and socially unproductive sentences. In this view, sentencing courts should be permitted to give significant weight to mitigating circumstances that might lead a court to conclude, for example, that substance abuse treatment in a non-prison setting (or as part of a sentence that includes fewer than three or four years of confinement in prison) stands a better chance of long-term efficacy. Others no doubt believe that uniform application of a mandatory minimum is necessary, toward such goals as deterring impaired driving and strictly enforcing sobriety in a penal setting. Under current law, however, these are debates for the legislature to resolve.

¶ 41. In sum, I conclude that the statutory language is ambiguous, but that the legislative history reveals the legislature's intent. Accordingly, I would affirm the judgment and respectfully dissent.